Reversed and remanded for a plenary hearing in accordance with this opinion. We do not retain jurisdiction.

HARRY F. HELDUSER, III, PLAINTIFF-APPELLANT, v. IRWIN I. KIMMELMAN, ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.

WILLIAM H. POWELL, III, PLAINTIFF-APPELLANT, v. IRWIN I. KIMMELMAN, ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Helduser v. Kimmelman, Submitted June 7, 1983—Powell v. Kimmelman, Argued June 7, 1983.

Decided October 14, 1983.

Before Judges BOTTER, POLOW and BRODY.

*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney for respondent in Helduser v. Kimmelman (*James J. Ciancia,* Assistant Attorney General, of counsel; *Jerry Fischer,* Deputy Attorney General, on the brief).

*Lowenstein, Sandler, Brochin, Kohl, Fisher & Boylan,* attorneys for appellant Helduser (*Lance D. Cassak* on the brief; *Gerald Krovatin* of counsel and on the brief).

*Arnold Robinson* argued the cause for appellant Powell (*Jacob & Robinson,* attorneys; *Arnold Robinson* on the brief).

*Peter R. Freed,* Deputy Attorney General, argued the cause for respondent in Powell v. Kimmelman (*Irwin I. Kimmelman,* Atty. Gen., attorney; *Peter R. Freed,* Deputy Atty. Gen., on the brief; *James J. Ciancia,* Asst. Atty. Gen., of counsel).

The opinion of the court was delivered by

BOTTER, P.J.A.D.

These consolidated[1] appeals were filed by suspended members of the state police, Harry F. Helduser, III, a state trooper, and William H. Powell, III, a detective, who seek reimbursement of counsel fees and costs incurred in defending themselves against criminal charges on which they were tried and acquitted. Relying on *N.J.S.A.* 59:10–1 *et seq.* and *N.J.S.A.* 59:10A–1 *et seq.,* appellants contend that the charges against them arose from incidents occurring in the course of performing their duty, and, having been cleared of criminal wrongdoing, the State should reimburse them for the cost of defending themselves. The indictment under which Helduser was tried charged him with homicide for having shot and killed a 21 year old motorist, Sang Ngoc Le, whom he had pursued and attempted to stop for speeding. The indictment under which Powell was tried involved misconduct in office and unlawful possession and distribution of marijuana. These charges resulted from evidence collected during an internal affairs investigation by the state police showing that Powell had diverted more than 250 pounds of marijuana from larger quantities entrusted to him by police authorities to be transported to a site for destruction.[2] The Attorney General denied the requests for reimbursement made

---

[1] After oral argument in the *Powell v. Kimmelman* case we decided to consolidate these appeals on our own motion.

[2] The indictment charged a violation of *N.J.S.A.* 2C:30–2, alleging in language derived from this section of the Code that for his personal benefit Powell had committed acts relating to his office which he knew were an unauthorized exercise of his official functions.

496

by counsel for Helduser and Powell, and these appeals followed.[3]
We now affirm.

Helduser's demand for reimbursement of counsel fees in the sum of $122,504.33 was made for the first time on October 27, 1981, after a jury acquitted him in his third trial on the homicide charge arising out of events that occurred on April 4, 1978. In the first trial Helduser was convicted of manslaughter, but that conviction was reversed on appeal to this court. A second trial ended in a hung jury. Helduser contends that his revolver discharged accidentally while he was in his motor vehicle abreast of the driver's side of the victim's vehicle. He contends that the gun discharged when the victim "swung his car into [Helduser's] vehicle and rammed it."[4] Helduser's explanation of the shooting is refuted by substantial evidence contained in the state

---

[3]Departmental disciplinary charges, termed court martial proceedings by the Attorney General, were also brought against both appellants. In addition to these appeals from the Attorney General's denial of their requests for reimbursement of counsel fees, appellants filed separate actions in the Law Division in which they sought such reimbursement and asserted claims for reinstatement to their positions, back pay and other relief. Powell's action in the Law Division was transferred to this court by a consent order and was assigned docket number A–4520–81T2. We were told at oral argument that the charges against Powell were sustained by the state police superintendent, that Powell has not been reinstated, and that an appeal has been taken from that decision. The sole issue separately pursued on this appeal is the right to reimbursement for counsel fees.

Helduser moved in the Law Division to enjoin the disciplinary proceedings or, alternatively, for an order that such proceedings be held by an administrative law judge. That motion was transferred to this court. We denied the injunction but entered an order assigning the disciplinary charges to an administrative law judge for a hearing subject to review and final decision by the Attorney General. Leave to appeal from this portion of the order was granted by the Supreme Court and a summary reversal was entered remanding the matter to the superintendent of the state police for a hearing on the merits without prejudice to an application being made to the superintendent for his recusal. The record before us does not show the outcome of those proceedings.

[4]This assertion is based upon an affidavit submitted by his attorney on a motion, not on Helduser's affidavit or testimony.

police investigation which resulted in the indictment returned by the Cumberland County Grand Jury. The reports of the investigation and statements of witnesses showed that the motorist slowed or stopped his car at an intersection and that Helduser drew up alongside the victim's vehicle, pointed his gun at the motorist, and fired the gun through the motorist's window, striking him in the head. Evidence gathered in the investigation would permit the conclusion that Helduser fired the gun intentionally or accidentally. But the evidence also showed that he violated state police regulations in using the gun in these circumstances. In addition, there was proof that Helduser's revolver was in an unsafe condition and that a gunsmith had warned him of this. It had a "hair trigger" which allowed the gun to discharge with very slight pressure, possibly because the hammer and trigger had been chrome or nickel plated.[5] Thus, evidence gathered in the investigation would permit the conclusion that Helduser's conduct constituted intentional wrongdoing or criminal recklessness and also violated state police regulations.

The record submitted by the Attorney General on the appeal in the Powell case also contains ample evidence of his wrongdoing in the diversion and sale of marijuana entrusted to him. Evidence of his criminal conduct was first called to the attention of the state police by Powell's former partner in a business which he conducted, with knowledge of his superiors, while a member of the state police. The investigation produced corroboration of Powell's misconduct although he was later acquitted of the charges. Powell's request for reimbursement of counsel fees in the sum of $25,885.00 was made for the first time in October 1981 after the criminal proceedings had terminated.

Helduser contends that he is entitled to reimbursement pursuant to provisions contained in *N.J.S.A.* 59:10A-1 *et seq.* and

---

[5]The Attorney General contends that the alteration of Helduser's gun also violated regulations.

*N.J.S.A.* 59:10–1 *et seq.* He argues that *N.J.S.A.* 59:10A–1 [6]
requires the Attorney General to provide for the defense of a
state employee in *any* action brought against the employee
unless the exceptions of *N.J.S.A.* 59:10A–2 apply.[7] Helduser
focuses on *N.J.S.A.* 59:10–2 and argues that its provision for
reimbursement of counsel fees governs. This section of the
relevant statutes requires indemnification for settlements or
judgments and reimbursement for counsel fees when the Attor-
ney General has refused to provide for the defense to which an
employee is entitled under *N.J.S.A.* 59:10A–1 *et seq.* Helduser
emphasizes that under *N.J.S.A.* 59:10–2 indemnification is re-
quired if the employee establishes that the act or omission on
which the action was based occurred within the scope of his
employment unless the State establishes that his conduct was
willful or was motivated by actual fraud or malice. Helduser
would require the State to prove this exception to avoid liability.
To satisfy his due process rights, he argues that the case should
be remanded to the Law Division for an evidentiary hearing.[8]

---

[6]*N.J.S.A.* 59:10A–1 provides:

Except as provided in [*N.J.S.A.* 59:10A–2], the Attorney General shall,
upon a request of an employee or former employee of the State, provide
for the defense of any action brought against such State employee or
former State employee on account of an act or omission in the scope of
his employment.

For the purposes of this section, the Attorney General's duty to defend
shall extend to a cross-action, counterclaim or cross-complaint against an
employee or former employee.

[7] One of the exceptions contained in *N.J.S.A.* 59:10A–2 applies to cases
in which furnishing a defense for the employee would create a conflict of
interest between the State and the employee. Helduser's brief recognizes this
exception but does not deal with its impact on this case. By contrast, Powell
contends that the Attorney General could not have furnished a defense to
Powell because of a conflict of interest. Presumably Helduser would contend
that no such conflict existed in his case.

[8]Helduser argues that because of the Attorney General's potential bias and
his adversary role in any such hearing, a Law Division judge should be
designated to conduct the hearing. Reliance is placed on *R.* 2:5–5(b). Hel-

The Attorney General argues against reimbursement on a number of grounds. His principal contention is that the provisions for indemnification and reimbursement for counsel fees provided in *N.J.S.A.* 59:10–2 apply only to civil, not criminal actions. Additional reasons for rejecting the claims for reimbursement were contained in letters sent by the Attorney General to appellants' attorneys in December 1981, as follows:

No request was made to the Attorney General, directly or through the Division of State Police, to provide for the defense of the charges against [Trooper Helduser/Detective Powell].

[Trooper Helduser's/Detective Powell's] actions or omissions were not within the scope of his employment;

His actions were of willful misconduct;

The defense of this action by the Attorney General would have created a conflict of interest between the State of New Jersey and the employee;

The Attorney General's authority to represent a State employee is discretionary; and

There was no opportunity for the Attorney General to assume exclusive control over the representation of this employee.

Powell's position on this appeal is similar to Helduser's, but it differs in some respects. Powell contends in general terms that, having been acquitted of criminal charges based upon misconduct related to his employment—the misappropriation of drugs entrusted to him—he should be reimbursed by the State for the cost of his defense. He seems to rely upon *N.J.S.A.* 59:10–2. He argues that reimbursement should not be denied for his noncompliance with "procedural" requirements of the pertinent statutes, such as his failure to make a formal request upon the Attorney General for representation. He contends that had such a request been made, a conflict of interest would have prevented the Attorney General from providing for his defense. He also contends that the provisions in the statute which give the Attorney General the right to exclusive control over the

---

duser moved in this court for an order remanding the case for the purpose of supplementing the record, but that motion was denied.

Neither Helduser's attorneys nor Powell's attorneys had asked the Attorney General for a hearing on any issues raised by their demands for reimbursement and the Attorney General's rejection of those demands.

litigation relate to civil actions not criminal proceedings. Thus, he contends that the Attorney General was not prejudiced by noncompliance with what he terms procedural requirements and, therefore, substantial compliance should be inferred.[9]

---

[9]In the *Helduser* appeal the Attorney General filed a Statement of Items Constituting the Record on Appeal pursuant to *R.* 2:5–4(b). In the *Powell* case, Powell filed a Statement of Evidence and Proceedings in Lieu of Transcript purportedly in compliance with *R.* 2:5–3(e). This included an affidavit by Powell dated July 27, 1982 which had not been submitted previously to the Attorney General. In the affidavit Powell asserts that when he was notified of the internal investigation and was advised of his *Miranda* rights on March 5, 1981 he asked "to be allowed to consult with a lawyer." He states that he was told that he could consult with members of the state police with legal training but he refused this offer and was told to consult an attorney of his own choosing. He engaged private counsel immediately and notified the state police the next day.

The appendix submitted by the Attorney General purports to contain items in the record of the agency below. The appendix contains the internal investigation and a copy of the notice of a "general disciplinary hearing" on charges preferred against Powell and a copy of those charges and specifications. The record also contains an affidavit of James M. Keating, Jr., Deputy Attorney General, which bears the date of October 14, 1982. This affidavit, like Powell's affidavit, was prepared after the Attorney General had rejected Powell's claim for reimbursement and after the notice of appeal had been filed. Neither Powell's affidavit nor Keating's affidavit can be viewed as part of the record in the agency below on which the agency action was taken. Nevertheless, we note the contents of Keating's affidavit because it refers to the procedures used by the Attorney General in considering requests for legal representation. We recite these facts for information purposes only and do not rely upon them in our decision.

Keating states that he has been in the Attorney General's office for approximately five years. Since 1978 he has been authorized, on behalf of the Attorney General, to review, approve or deny requests for the Attorney General to provide legal representation for State employees who have been charged with certain offenses "as provided by *N.J.S.A.* 59:10A–1 *et seq.*" He states that all requests of this kind are directed to him and to date he has acted upon "several hundreds of such applications." He further states that when a request is granted the case is usually assigned by him "on a geographic basis to an attorney in private practice from a list of attorneys who handle these matters for a modest charge to the State." He keeps all files and correspondence concerning these matters in his office.

Keating's affidavit further states that in cases involving members of the Division of State Police, a standardized procedure was adopted and has

■ In our view the provisions for indemnification of state employees contained in *N.J.S.A.* 59:10–1 *et seq.,* including the right to reimbursement for counsel fees when the Attorney General has refused to provide for an employee's defense, were intended to apply to civil actions only, and not to criminal actions. We also conclude that those provisions of *N.J.S.A.* 59:10A–1 *et seq.* which obligate the Attorney General to provide for the defense of State employees were intended to apply solely to civil actions, leaving the defense of criminal actions entirely to the Attorney General's discretion.

The principal section of the statutes upon which appellants rely, *N.J.S.A.* 59:10–2, was adopted as part of the New Jersey Tort Claims Act, *N.J.S.A.* 59:1–1 *et seq.,* enacted by *L.*1972, *c.* 45.[10] *N.J.S.A.* 59:10–2 must be read in conjunction with *N.J. S.A.* 59:10–1. *N.J.S.A.* 59:10–1 applies to cases in which the Attorney General has provided for the defense of State employees; *N.J.S.A.* 59:10–2 applies to cases in which the Attorney General has refused to provide for such a defense. *N.J.S.A.*

been followed for several years. He states, "A written request that the Attorney General provide legal representation, together with a factual summary of the case, is submitted by or on behalf of the superintendent of state police. This is accompanied by a written request from the individual member and a report prepared by the Internal Affairs Bureau which contains all of its investigation of the charges and a recommendation to the superintendent that representation should be provided." In Powell's case there was no record of any request for legal representation in connection with the charges against him. After reviewing the request for reimbursement with the superintendent of state police and examining the background of the case, Keating concluded that even had a request for legal representation been made it would have been denied, "because it did not come within the purview of the statute." He states that thereafter he met with the Attorney General and reviewed the request for reimbursement, recommending that it be denied. The Attorney General concurred in the recommendation and authorized Keating to send the rejection letter previously referred to.

[10]*N.J.S.A.* 59:10A–1 *et seq.,* which deals with the authority of the Attorney General to provide for the defense of State employees, was enacted by *L.*1972, *c.* 48, as companion legislation.

59:10–1 provides that State employees or former employees are entitled to indemnification if, pursuant to the provisions of *L. 1972, c. 48 (N.J.S.A. 59:10A–1 et seq.)*, the Attorney General provides for the defense of the employee, except that the State is not authorized to pay for punitive or exemplary damages or damages resulting from the commission of a crime. The indemnification provided by this section is for damages in civil cases only; it makes no reference to counsel fees because it applies only to those cases in which counsel has been provided for the employee's defense. The Legislature could not have intended *N.J.S.A.* 59:10–1 to apply to criminal actions. Employees would have no need for indemnification in criminal cases in which the Attorney General has provided for their defense. They would have no claim for counsel fees, and the criminal proceedings would not result in a judgment or settlement requiring indemnification. Thus, it is clear that indemnification under *N.J.S.A.* 59:10–1 applies to civil claims only. The type of indemnification which the Legislature had in mind, indemnification for settlements or judgments on damage claims, is made clear by the next section, *N.J.S.A.* 59:10–2.

*N.J.S.A.* 59:10–2 [11] provides for the right of an employee to indemnification by the State when the Attorney General has

---

[11]*N.J.S.A.* 59:10–2 provides as follows:

If the Attorney General refuses to provide for the defense of a State employee as required by the provisions of P.L.1972, c. 48, Senate Bill No. 993 now pending before the Legislature [*N.J.S.A.* 59:10A–1 *et seq.*], the employee or former employee of the State shall be entitled to indemnification from the State if he establishes that the act or omission upon which the claim or judgment was based occurred within the scope of his employment as an employee of the State and the State fails to establish that he acted or failed to act because of actual fraud, actual malice or willful misconduct.

If the State employee establishes that he was entitled to a defense under the provisions of this chapter, the State shall pay or reimburse him for any bona fide settlement agreements entered into by the employee, and shall pay or reimburse him for all costs of defending the action, including reasonable counsel fees and expenses, together with costs of appeal, if any.

*refused* to provide for his defense "as required by the provisions of [*N.J.S.A.* 59:10A–1 *et seq.*]." Indemnification is subject to two conditions, in addition to the Attorney General's refusal of the request for a defense to which the employee was entitled.[12] The conditions are: (1) that the conduct on which "the claim or judgment was based" occurred within the scope of the employment, and (2) the State fails to prove that the claim was based upon actual fraud, actual malice or willful misconduct. This section further provides that if the State employee was entitled to a defense, the State "shall pay or reimburse him for any bona fide settlement agreements entered into" by him and for "any judgments entered against" him, and "shall pay or reimburse him for all costs of defending the action, including reasonable counsel fees and expenses, together with costs of appeal, if any." The section also excludes payment for punitive or exemplary damages or damages resulting from the commission of a crime.

The language of *N.J.S.A.* 59:10–2 is appropriate to civil claims for damages not to criminal actions. Indemnification is provided for settlements or judgments, presupposing a civil claim for damages, not a criminal proceeding. The claim must arise from an act or omission in the course of employment, provided it was not an act of willful misconduct, actual fraud or actual malice. All of these terms are particularly relevant to civil claims. As will be seen, they derive from the *Report of the Attorney General's Task Force on Sovereign Immunity* (1972) which recommended statutory provisions for indemnifying employees "for *civil* liability arising within the scope of their employment and not caused by actual fraud, actual malice or willful misconduct."

Nothing in this section authorizes the State to pay for punitive or exemplary damages or damages resulting from the commission of a crime.

[12]*N.J.S.A.* 59:10A–1, quoted in note 6 above, deals with the Attorney General's duty to defend a State employee or former employee "upon a request of" the employee.

*Id.* at 15 (emphasis supplied).[13] The only provision in the statutes in question for reimbursement of counsel fees and costs "of defending the action" is incidental to and part of the provision for indemnifying against such civil claims.[14]

Other provisions of this law are consistent with this interpretation. *N.J.S.A.* 59:10–3 provides that a State employee shall not be entitled to indemnification "unless within 10 calendar days of the time he is served with any summons, complaint, process, notice, demand or pleading, he delivers the original or a copy thereof to the Attorney General or his designee." Upon receiving such process or notice, "the Attorney General may, pursuant to the provisions of [*N.J.S.A.* 59:10A–1 *et seq.*], assume exclusive control of the employee's representation and such employee shall cooperate fully with the Attorney General's defense." Clearly, these provisions are appropriate to civil

---

[13]It is difficult to contemplate that a crime could be committed by a State employee "within the scope of his employment." See, *e.g., Valerius v. Newark,* 84 *N.J.* 591, 596 (1980), which involved a police officer who was acquitted of a scheme to commit a fictitious arrest in the course of which drugs and $23,000 were allegedly seized for the officer's personal benefit. The court held that the conduct, if it occurred, would be a perversion of the police officer's duties and responsibilities that could not be considered conduct "arising out of or incidental to the performance of his duties" within the meaning of *N.J.S.A.* 40A:14–155. This statute provides for the defense of municipal police officers and for reimbursement of their defense expenses in certain cases.

[14]Had the Legislature contemplated indemnification for counsel fees in criminal cases, as in the statute dealing with municipal police officers, *N.J.S.A.* 40A:14–155, we are certain that different language would have been used. The exception contained in *N.J.S.A.* 59:10–2 for willful, fraudulent or malicious conduct could include some crimes, but these terms do not embrace all criminal conduct, such as criminal recklessness. *See N.J.S.A.* 2C:2(b)(3) (defining criminal recklessness); *N.J.S.A.* 2C:11–4(a) (reckless manslaughter); *N.J.S.A.* 2C:11–5 (death by auto). But the Legislature did not have to broaden this exception to exclude all criminal conduct. Since the indemnification provisions contained in *N.J.S.A.* 59:10–1 and 2 were part of the Tort Claims Act, and the Legislature contemplated indemnification solely for damages in civil actions for tortious conduct, it was sufficient to exclude indemnification for damages caused by the commission of a crime.

actions, not criminal actions. The Attorney General could not control the defense of a state employee charged with a crime, particularly if the crime charged was the violation of New Jersey law. See *N.J.S.A.* 59:10A–2(c) which authorizes the Attorney General to refuse to provide for the defense of an action if he determines that it would create a conflict of interest between the State and the employee.[15] As noted above, Powell argues that the provisions authorizing the Attorney General to assume exclusive control of the defense apply to civil actions and not criminal actions. This conclusion is supported by the statement accompanying *Senate Bill* 993 (1972) which became *N.J. S.A.* 59:10A–1 *et seq.* *N.J.S.A.* 59:10A–4 also authorizes the Attorney General to assume "exclusive control" over the employee's representation and requires the employee to "cooperate fully with the Attorney General's defense." The statement reads:

> This bill is a companion bill to Senate Bill No. 969. It is primarily for the purpose of satisfying the needs for representation of State employees and former State employees resulting from the passage of Senate Bill No. 969, the New Jersey Tort and Contractual Claims Act. Although this authority is undoubtedly possessed by the Attorney General under his existing powers, this amendment is intended to explicitly establish that authority and the circumstances under which it will be exercised.
>
> In addition, this amendment makes clear that the Attorney General shall have exclusive control of the litigation and State employees and former State employees must cooperate with him fully or lose their right to indemnification provided in Chapter 10 of the New Jersey Tort and Contractual Claims Act.

The foregoing statement is a useful introduction to our consideration of *N.J.S.A.* 59:10A–1. *N.J.S.A.* 59:10A–1, quoted in note 6 above, requires the Attorney General to provide for the defense of a state employee or former state employee in "any action . . . brought on account of an act or omission in the scope

---

[15] *Cf. Edison Tp. v. Mezzacca,* 147 *N.J.Super.* 9, 14 (App.Div.1977). The case deals with the provisions in *N.J.S.A.* 40A:14–155 for the defense of municipal police officers charged in disciplinary proceedings or criminal proceedings instituted on complaint of the municipality. The court observed that in such cases "the municipality could have no say in the choice of counsel to defend against the charges made by it."

of his employment." Although the term "any action" is seemingly all inclusive, other terms used in this section (the "cross-action, counterclaim or cross-complaint" language) generally signify civil actions not criminal actions. The same may be said of *N.J.S.A.* 59:10A–2. *N.J.S.A.* 59:10A–2 allows the Attorney General to refuse to provide a defense if (a) the act or omission was not within the scope of employment, or (b) the misconduct was willful or was motivated by actual fraud or actual malice, or (c) the defense by the Attorney General would create a conflict of interest between the State and the employee. Again, this language is particularly appropriate to civil actions based on tortious conduct, see note 14 above, as are the provisions of *N.J.S.A.* 59:10A–4 which allow the Attorney General to assume exclusive control over the employee's representation.

The last sections to consider are *N.J.S.A.* 59:10A–3, which plays a key role in Helduser's argument, and *N.J.S.A.* 59:10A–5. *N.J.S.A.* 59:10A–3 provides:

> In any other action or proceeding, including criminal proceedings, the Attorney General may provide for the defense of a State employee or former State employee, if he concludes that such representation is in the best interest of the State.

*N.J.S.A.* 59:10A–5 allows the Attorney General to use "an attorney from his own staff" or to employ "other counsel" in providing for the defense of a state employee. The Attorney General may also do so "by asserting the State's right under any appropriate insurance policy which requires the insurer to provide the defense."

Helduser argues that indemnification for the cost of defending a criminal action is required under *N.J.S.A.* 59:10–2 whenever the Attorney General has refused to provide for the employee's defense as required by the provisions of *N.J.S.A.* 59:10A–1 *et seq.* He contends that the Attorney General must defend a state employee in "any" action based on an act or omission committed in the course of his employment, *N.J.S.A.* 59:10A–1, unless it comes within the exceptions contained in *N.J.S.A.* 59:10A–2, namely, conduct that is willful, malicious or fraudu-

lent, or cases presenting a conflict of interest between the employee and the State. Helduser argues that the reference in *N.J.S.A.* 59:10A–3, to "any other action or proceeding, including criminal proceedings," must refer to all actions based on conduct *not* within the scope of employment. In such cases, including criminal cases, the Attorney General may provide a defense if he concludes that it is in the State's interest to do so. Thus, Helduser argues, the indemnification provisions of *N.J.S.A.* 59:10–1 and –2 apply to all civil and criminal actions arising from conduct within an employee's scope of employment, subject to the exceptions contained in *N.J.S.A.* 59:10A–2.

We reject this line of reasoning for several reasons. As previously stated the language of *N.J.S.A.* 59:10–1 and –2, and the statement accompanying the bill that became *N.J.S.A.* 59:10A–1 *et seq.* as well as other legislative history, about which more will be said shortly, all indicate that the indemnification provisions in *N.J.S.A.* 59:10–1 and –2 apply only to civil actions for damages based upon an employee's tortious conduct. Similarly, *N.J.S.A.* 59:10A–1 and –2 were intended to govern the Attorney General's duty to defend state employees in civil actions. The reference in *N.J.S.A.* 59:10A–3 to "any other action or proceeding, including criminal proceedings," was simply to preserve the Attorney General's prior statutory and inherent authority to represent or furnish a defense for state employees. See *N.J.S.A.* 53:1–22, repealed by *L.*1972, *c.* 45, § 59:12–2, which gave the Attorney General discretionary authority to furnish the defense for members of the state police in criminal proceedings in the interest of the State and the Division of State Police.[16] It is unlikely that the Legislature intend-

---

[16]*N.J.S.A.* 53:1–22 provided that the Attorney General, personally or by an assistant or by the appointment of an attorney, may defend the Division of State Police and its members in "criminal actions and proceedings." *N.J.S.A.* 38A:4–10, also repealed by *L.*1972, *c.* 45, § 59:12–2, provided for representation by the Attorney General of any member of the organized militia for any act in his official capacity in the discharge of his duty and for any omission to do an act which he had a duty to perform.

ed *N.J.S.A.* 59:10A–3 to apply to civil actions based on conduct outside an employee's scope of employment, as Helduser contends. It is difficult to contemplate the Attorney General's use of public funds to defend someone for conduct that is beyond the scope of his employment. More likely, the reference to "any other action or proceeding" was simply a catch-all to cover actions not arising under the Tort Claims Act, including civil actions not seeking damages, as well as criminal actions, in which the Attorney General should have discretionary authority to furnish a defense for a state employee when the state interest would be served.

The history of this legislation supports our interpretation. The Tort Claims Act was based on the *Report of the Attorney General's Task Force on Sovereign Immunity* (1972) (*Task Force Report*), referred to above. The report contained the proposed Tort Claims Act, *N.J.S.A.* 59:1–1 *et seq.* including *N.J.S.A.* 59:10–1 to –4. Chapter 9 of the *Task Force Report* contains the proposed companion legislation that became *N.J.S.A.* 59:10A–1 *et seq.* Clearly, the focus was upon the need to defend and indemnify state employees against civil liability for damages. The title to *L.*1972, *c.* 48, *N.J.S.A.* 59:10A–1 *et seq.* is "An act concerning the defense of state employees and former employees *in relation to claims* arising out *of or in connection with their employment* by the State." (Emphasis supplied) The task force was formed in response to our Supreme Court's decisions in *P, T & L Constr. Co. v. Transp. Dep't Comm.*, 55 *N.J.* 341 (1970) and *Willis v. Conservation and Economic Dev. Dep't.*, 55 *N.J.* 534 (1970). *Task Force Report* at 1. The focus of the report was the "selective abolition" of the State's sovereign immunity by

---

The *Report of the Attorney General's Task Force on Sovereign Immunity, supra,* concluded that despite specific statutory provisions for representing state officers and certain employees, "the Attorney General has inherent power to represent state officers *and* employees and that the mere specification of powers does not indicate a legislative intent to preclude him from acting to represent state employees when he considers it to be in the best interest of the State of New Jersey." at 49.

legislation "in contract and tort." As noted above, among the principal recommendations was the indemnification of public employees "for civil liability arising within the scope of their employment. . . ." *Id.* at 15. Because state employees were subject to civil liability although the State was immune, protecting them against civil liability was considered an important goal in itself even if the State did not yield sovereign immunity in general. *Ibid.*

Another of the "principal recommendations" of the *Task Force Report* was the following:

> 7. *The Attorney General of the State of New Jersey should provide for the defense of all State employees sued for negligence within the scope of their employment.* [*Id.* at 7]
>
> The common practice throughout the other jurisdictions examined is that the Attorney General of the respective states represents state employees in the civil actions brought against them. It is the current practice of the New Jersey Attorney General to provide such representation, and it is essential that he should continue to do so and be provided with a more specific statutory authority under which to act. [*Id.* at 16]

Although this summary recommendation concerned the defense of civil actions based on negligence, the report referred to a few statutes that authorized the Attorney General to furnish a defense for certain state employees in criminal cases as well. *See* note 16 above.[17] Asserting that the Attorney General has inherent power to represent state officers and employees, it was recommended that his right to represent state employees should be made clear, since the existing statutory general provision for representation by the Attorney General spoke of state "officers" and not "employees."

■ Thus, we conclude that the phrase "including criminal proceedings" contained in *N.J.S.A.* 59:10A-3, together with the repeal of *N.J.S.A.* 53:1-22 and *N.J.S.A.* 38A:4-10, was intended merely to express the Attorney General's discretionary authority

---

[17]The report also noted the provisions of *N.J.S.A.* 18A:60-4 and *N.J.S.A.* 18A:60-5 for defending teachers in state educational institutions against civil and criminal actions without reference to the Attorney General.

to furnish a defense for all state employees charged with crimes when he determines that it is the "best interest of the State" to do so. There is nothing in the *Task Force Report* that indicates an intention to reimburse employees for the cost of defending against criminal charges if the Attorney General has refused their request for representation. The right of the Attorney General to refuse to defend an employee when a conflict of interest between the State and the employee would be created, as provided in *N.J.S.A.* 59:10A–2(c), could support that refusal in most criminal actions.[18] After all, the Attorney General is the chief law enforcement officer of the State. *See N.J.S.A.* 52:17A–2 and *N.J.S.A.* 52:17A–4. All crimes are prosecuted in the name of the State of New Jersey by the Attorney General and the county prosecutors. *N.J.S.A.* 2A:158–4; *see Morss v. Forbes*, 24 *N.J.* 341, 388 (1957) (Weintraub, J., dissenting in part). Notwithstanding differences in responsibility between county prosecutors and the Attorney General, see *ibid.,* the Attorney General must be left with broad discretion to avoid a conflict of interest that may be created by his furnishing a defense for a state employee charged with the commission of a crime.[19]

We do not imply that the Attorney General should not furnish counsel to defend members of the state police or other state officers against criminal charges. Apparently the Attorney General does furnish such services in his discretion. *See* note 6

---

[18]It might be argued that no conflict of interest would be presented when a state employee is charged in another jurisdiction with a crime arising in the course of his state employment. Even then, however, the employee might become subject to disciplinary charges, as in the cases at hand, that would present a conflict.

[19]On the civil side, notwithstanding that the Attorney General acts as the sole legal adviser and attorney to all state officers, departments, boards, and agencies, *N.J.S.A.* 52:17A–4(e), the Attorney General may, in his discretion, refuse to represent or furnish counsel for a state agency which is in conflict with another state department or officer. *State Health Planning and Coordinating Council v. Hyland,* 161 *N.J.Super.* 468, 474–475 (App.Div.1978).

above.  The Attorney General may find it in the State's interest to do so when state officers and employees are unjustly or frivolously accused of crimes or other transgressions.  *Cf. Van Horn v. Trenton*, 80 *N.J.* 528, 536–537 (1979).  However, *N.J. S.A.* 59:10–2 does not authorize indemnification against counsel fees and costs incurred in defending against criminal charges when the Attorney General does not provide for the employee's defense.  This contrasts with the provisions pertaining to municipal police officers, *N.J.S.A.* 40A:14–155, which were in effect when *N.J.S.A.* 59:10–1 *et seq.* and *N.J.S.A.* 59:10A–1 *et seq.* were enacted.  Accordingly, the Attorney General properly denied appellants' requests for reimbursement, apart from his contention that appellants never asked him to furnish them with a defense.

Affirmed.