NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3379-24

WALTER J. DIRKIN, in his
official capacity as an ASSISTANT
ESSEX COUNTY PROSECUTOR,

>**APPROVED FOR PUBLICATION**
>
>**May 11, 2026**
>
>**APPELLATE DIVISION**

      Appellant,

v.

OFFICE OF THE ATTORNEY
GENERAL, DEPARTMENT OF
LAW & PUBLIC SAFETY,

      Respondent.

_____

Argued on March 4, 2026 - Decided May 11, 2026

Before Judges Currier, Smith and Jablonski.

On appeal from the New Jersey Department of Law &
Public Safety.

Frank J. Ducoat, Deputy Chief Assistant Prosecutor,
argued the cause for appellant (Theodore N. Stephens
II, Essex County Prosecutor, attorney; Frank J.
Ducoat, Deputy Chief Assistant Prosecutor, of counsel
and on the briefs).

Deborah Wassel, Assistant Attorney General, argued
the cause for respondent (Jennifer Davenport,
Attorney General, attorney; Sookie Bae-Park,
Assistant Attorney General, of counsel and on the

brief; Andrew Spevack, Deputy Attorney General, on the brief).

Bradley D. Billhimer, Ocean County Prosecutor, attorney for amicus curiae County Prosecutors Association of New Jersey (Monica do Outeiro, Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

SMITH, J.A.D.

In this administrative appeal, we consider for the first time whether the Office of the Attorney General (OAG) is obligated to exercise its statutory discretion under the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to :14-4, to defend and to indemnify an assistant county prosecutor who is the subject of an attorney disciplinary proceeding stemming from the performance of their official duties.

Walter J. Dirkin, a deputy chief assistant prosecutor in the Essex County Prosecutor's Office (ECPO), appeals the final agency decision of the OAG denying his request for defense and indemnification in an attorney disciplinary proceeding. After Dirkin served as the designated prosecutor in an Essex County criminal matter[1], the Office of Attorney Ethics (OAE) filed a complaint alleging he failed to present exculpatory evidence during grand jury proceedings, violating RPC 1.3 and 3.8(d). Dirkin then requested a defense

---

[1] State v. Anderson, Indictment No. 2023-03-739.

A-3379-24

and indemnification from the OAG in the ensuing OAE proceeding. In its final administrative decision, the OAG declined Dirkin's request, finding the disciplinary action did not fit any of the enumerated actions the State is obligated to defend under N.J.S.A. 59:10A-1.

On appeal, Dirkin contends that the OAG's decision was improper, arguing that the TCA should be interpreted to require the OAG to defend and indemnify him under either its mandatory or discretionary provisions. In the alternative, Dirkin argues that we should impose a common law duty on the OAG to defend and indemnify him on these facts.

We affirm. The mandatory defense and indemnification provisions under N.J.S.A. 59:10-1 and :10A-1 do not cover disciplinary actions filed by the OAE. The Attorney General did not abuse its discretion in denying representation under N.J.S.A. 59:10A-3, as the ethics complaint frames Dirkin's actions in terms of willful misconduct. The common law doctrine of respondeat superior requires a tort claim, which we do not find here. Finally, we decline to impose a common law duty on the Attorney General under these circumstances.

I.

In March 2023, Dirkin, in his capacity as an assistant Essex County prosecutor, presented the case of State v. Anderson to a grand jury, alleging

that the defendant, acting as a volunteer, improperly took money from the New Jersey Arts Incubator (NJAI). The grand jury returned an indictment, finding the State had made a sufficient showing to charge the defendant with third-degree theft by unlawful taking, N.J.S.A. 2C:20-3(a). In June 2023, the defendant moved to dismiss the indictment, alleging Dirkin possessed exculpatory evidence regarding the defendant's status as an independent contractor of the NJAI, which he failed to present to the grand jury. Dirkin reviewed the motion and dismissed the charges. In a letter to the Essex County Prosecutor, Dirkin recommended dismissal, concluding that the evidence, including the defendant's contract with NJAI, made a conviction unlikely, as it would "raise sufficient reasonable doubt to a jury as to the defendant's guilt as to make a conviction unlikely in this case." In the same letter Dirkin contended that the contract between NJAI and the defendant was previously unknown to him.

In January 2024, Anderson filed a grievance with the OAE against Dirkin. Dirkin turned over his ECPO files to the District VII Ethics Committee, who interviewed him as part of its investigation into the grievance. After the investigation, the OAE filed a complaint against Dirkin, alleging he violated RPC 3.8(d) and 1.3, by failing to present exculpatory material known

4

to him to the grand jury, and by failing to act with reasonable diligence to review his investigative file before presenting the case to the grand jury.

In April 2025, Dirkin sought defense and indemnification from the OAG, citing the TCA as well as our Supreme Court's holding in Wright v. State, 169 N.J. 422 (2001). The OAG denied his request, finding that defense under N.J.S.A. 59:10A-1 and indemnification under N.J.S.A. 59:10-1 are required only for "claims sounding in tort or brought pursuant to the Civil Rights Act," or "claims seeking damages in relief." Finding that the claim against Dirkin was a disciplinary action under Rule 1:20-4(b), the OAG determined that the claim did not fit any of the enumerated actions the State is obligated to defend under N.J.S.A. 59:10A-1 of the TCA.

The OAG distinguished Wright from the issue in Dirkin's petition:

> This is an ethics/disciplinary action, which contains no claims or causes of action to which the State's TCA obligation to defend and indemnify applies at all. Chasin v. Montclair State Univ., 159 N.J. 418, 428 (1999); In re Petition for Review of Op. 552 of the Advisory Comm. on Prof'l Ethics, 102 N.J. 194, 200 (1986); Monmouth Cnty. Prosecutor's Off. v. Off. of the AG, 480 N.J. Super. 33, 40-44 (App. Div. 2024); In re Napoleon, 303 N.J. Super. 630, 633-34 (App. Div. 1997).
>
> [(Citations reformatted).]

Having determined that N.J.S.A. 59:10A-1 and :10-1 did not apply to compel the OAG to defend and to indemnify Dirkin, the OAG next declined to

exercise its discretionary authority to represent Dirkin under N.J.S.A. 59:10A-3. Dirkin sought reconsideration, which the OAG denied.

On appeal, Dirkin argues that he was entitled to defense and indemnification, and that the OAG final administrative decision was arbitrary, capricious, and unreasonable. He asserts: (1) N.J.S.A. 59:10A-1 and :10-1 are applicable; (2) the OAG should have exercised its statutory discretion to defend and to indemnify Dirkin; (3) the common law compels the OAG to defend and to indemnify him; and (4) we should impose a duty on the OAG to defend and to indemnify him on the record before us, if we conclude neither the TCA nor the common law imposes a duty on the OAG. As amicus curiae, the County Prosecutors Association of New Jersey supports Dirkin's position.

II.

Our review of an agency determination is limited. Seago v. Bd. of Trs., Tchrs.' Pension & Annuity Fund, 257 N.J. 381, 391 (2024). We will sustain an agency's final decision "unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Ibid. (quoting Allstars Auto Grp., Inc. v. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018)). Our role in reviewing administrative action is generally limited to:

> "(1) whether . . . the agency follow[ed] the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative

6

policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been" reached.

[Bd. of Educ. of Sparta v. M.N. on behalf of A.D., 258 N.J. 333, 342 (2024) (alteration in original) (quoting Allstars Auto Grp., Inc., 234 N.J. at 157).]

We owe "substantial deference" to an agency if its decision satisfies the criteria. Alcantara v. Allen-McMillan, 482 N.J. Super. 424, 434 (App. Div. 2025) (quoting In re Herrmann, 192 N.J. 19, 28 (2007)). Even if we disagree with an agency's decision, we "may not substitute [our] own judgment for the agency's, even though [we] might have reached a different result." Allstars Auto Grp., Inc., 234 N.J. at 158 (quoting In re Stallworth, 208 N.J. 182, 194 (2011)). It is the burden of the party challenging the final agency decision to prove the agency acted in an arbitrary or capricious manner. Monmouth Cnty. Prosecutor's Off., 480 N.J. Super. at 40.

However, we review an agency's interpretation of a statute or case law de novo. Bulur v. N.J. Off. of the AG, 261 N.J. 275, 286 (2025).

III.

A.

We first consider whether the TCA compels the OAG to defend and indemnify Dirkin.

7

Chapter 10A of Title 59 defines the powers and responsibilities of the Attorney General in defending state employees against certain claims. N.J.S.A. 59:10A-1 to -6. Section 10A-1 reads in pertinent part, "the Attorney General shall, upon request of an employee or former employee of the State, provide for the defense of any action brought against such State employee or former State employee on account of an act or omission in the scope of [their] employment." The State's duty to indemnify an employee parallels the duty to defend. Chasin, 159 N.J. at 426. N.J.S.A. 59:10-1 establishes the right of a state employee or former state employee to indemnification where the OAG has tendered a defense pursuant to N.J.S.A. 59:10A-1.

The parties do not dispute that Dirkin was an "employee" of the State acting "[with]in the scope of his employment," for purposes of sections 10A-1 and 10-1. The dispositive question is whether: Dirkin's disciplinary proceeding an "action" under section 10A-1? The Chasin Court considered this question and defined the meaning of "any action," concluding N.J.S.A. 59:10A-1 mandated defense of a public employee in "'any action' brought in tort." 159 N.J. at 427-28. (emphasis added).

The OAE's action against Dirkin was not a tort claim, but rather an attorney disciplinary proceeding. The OAE's complaint alleging violations of the RPCs arises from Dirkin's duties as an assistant county prosecutor but

seeks no damages on behalf of the defendant in the underlying indictment. Rather, it is directed to Dirkin's conduct as a licensed attorney.

Dirkin relies on Wright, 169 N.J. 422, and its progeny, Lavezzi v. State, 219 N.J. 163 (2014) and Gramiccioni v. Dep't of L. & Pub. Safety, 243 N.J. 293 (2020), to support his argument that the TCA requires the OAG to defend and to indemnify him in his disciplinary action.

In Wright, a former defendant who was the subject of a lengthy multijurisdictional investigation was convicted, after trial, of various drug manufacturing, possession, trafficking, "kingpin," and conspiracy charges. 169 N.J. at 430. He was sentenced to life in prison with a thirty-year parole period of ineligibility. Ibid. We affirmed all Wright's convictions except the kingpin conviction, which we reversed. Id. at 431.

Wright next challenged his remaining convictions in a petition for post-conviction relief (PCR). Ibid. After an evidentiary hearing, the trial court found that the Somerset County Prosecutor's Officer (SCPO), including the County Prosecutor himself, had engaged in serious misconduct during Wright's investigation and prosecution. Ibid. As a result, the court reversed Wright's remaining convictions. Ibid. Thereafter, the SCPO dismissed Wright's indictment with prejudice, approximately six and a half years after he was sentenced to life in prison. Ibid.

In the meantime, Wright filed a civil complaint against several counties including Somerset County, their prosecutor's offices, as well as certain municipalities and their police departments, individual police departments, and one municipal prosecutor. Id. at 430-31. In his civil suit, Wright made numerous misconduct allegations against the former Somerset County Prosecutor, an assistant prosecutor, and two detectives, in addition to other individuals. Ibid.

After the dismissal of the indictment, Wright amended his civil complaint to include additional defendants, including the State. Id. at 432. Somerset County filed crossclaims for the State to defend and indemnify employees in its prosecutor's office. Ibid. The State moved for summary judgment on the crossclaims and the trial court granted the motion. Id. at 432-33. The trial court also granted the State summary judgment on Somerset County's claim that the State was liable under a theory of vicarious liability for the tortious acts of its county employees. Id. at 434. We denied Somerset's motion for leave to appeal on the various orders. Ibid. The Supreme Court granted interlocutory review. Ibid.

The Court noted that Wright's claims in his civil complaint all sounded in tort. Id. at 430-31. Therefore, it considered whether, under the TCA, the State was liable for SCPO's alleged tortious conduct during the investigation,

arrest and prosecution of Wright. Id. at 434-35. The Court interpreted the TCA to apply to "prosecutors and their subordinates for tortious conduct committed" during their law enforcement duties. Id. at 455-56 (emphasis added). The Court reversed and remanded to the Law Division, concluding the State "may be required to indemnify and defend SCPO's prosecutors and their subordinates for tortious conduct committed during the investigation, arrest, and prosecution," under the TCA. Id. at 456-57.

In Wright, the Court did not determine the nature of the claim eligible for defense under the TCA, but whether the prosecutor's office defendants, all Somerset County employees, could be "considered 'State employees' within the meaning of the defense and indemnification provisions, N.J.S.A. 59:10-1 and N.J.S.A. 59:10A-1." Id. at 454. Wright held that an assistant county prosecutor is entitled to defense and indemnification by the OAG when they are "execut[ing] their sworn duties to enforce the law by using all the tools lawfully available to them to combat crime." Ibid.

That is not the issue presented here. The question before this court is whether the OAG is obligated to defend Dirkin under the given circumstances

11

– a disciplinary action.[2]  We find In re Napoleon, 303 N.J. Super. 630 (App. Div. 1997), to be instructive.

Napoleon was a physician employed by the State of New Jersey as a medical director at a corrections facility.  The OAG filed a complaint with the State Board of Medical Examiners, alleging that Napoleon had committed multiple acts of professional misconduct, including but not limited to: malpractice; gross negligence; and intentional torts against inmates.  Through counsel, Napoleon sought defense and indemnification from the OAG under N.J.S.A. 59:10A-1 and N.J.S.A. 59:10-1.  The OAG denied his request.  Napoleon appealed.

On appeal, we affirmed the OAG's final administrative decision, holding that "a disciplinary hearing commenced by the licensing authority which oversees the professional conduct of persons" is not a civil action for damages. Napoleon, 303 N.J. Super. at 633-34.  Consequently, we concluded the OAG

_____

[2]  For similar reasons, the two other cases cited by plaintiff are distinguishable. Lavezzi continued the Wright Court's analysis, examining the alleged tortious actions of the defendant prosecutors to determine whether they were administrative or law enforcement functions. 219 N.J. at 170-71.  The Lavezzi Court held that the TCA applied to prosecutors in their law enforcement functions on behalf of the State, but not for their administrative functions with the county.  Id. at 178-80.  In Gramiccioni, the Supreme Court held that the TCA's requirement that OAG defend and indemnify prosecutors applied to federal civil rights claims, 42 U.S.C. § 1983, when their "acts or omissions . . . [are] tied to their law enforcement responsibilities."  243 N.J. at 296-97.

was not obligated to provide a defense and indemnification under N.J.S.A. 59:10A-1 and N.J.S.A. 59:10-1, even though Napoleon was directly employed by the State.

Our Supreme Court has concluded that "[t]he disciplinary rules serve purposes that are substantially different from those of an individual litigant in a civil action." Baxt v. Liloia, 155 N.J. 190, 202 (1998). In Baxt,

> the Court examined "whether a violation of the Rules of Professional Conduct can be used to provide a basis for civil liability against an adversary's attorney." The Court declined to hold "that the RPCs in themselves create a duty or that a violation of the RPCs, standing alone, can form the basis for a cause of action."
>
> [Barsotti v. Merced, 346 N.J. Super. 504, 520-21 (App. Div. 2002) (quoting Baxt, 155 N.J. at 197, 201).]

More recently, our Supreme Court followed Baxt's conclusion, that "standing alone, a violation of the RPCs does not create a cause of action for damages in favor of a person allegedly aggrieved by that violation." Meisels v. Fox Rothschild LLP, 240 N.J. 286, 299 (2020) (emphasis added). While violation of the RPCs may lead to ethics violations and disciplinary action, it does not create tortious conduct, nor civil damages covered by the defense and indemnification provisions of the TCA. Dirkin's disciplinary action arises from his role enforcing the laws of our state. It does not involve a state tort claim, a federal civil rights claim, nor a claim for damages.

13

We conclude that the OAG is not required under N.J.S.A. 59:10A-1 and 59:10-1 to defend and indemnify Dirkin.

B.

We next turn to Dirkin's argument that the OAG should have exercised its discretion to defend him under N.J.S.A. 59:10A-3.

Following the mandatory defense and indemnification provisions of N.J.S.A. 59:10A-1 to -2, N.J.S.A. 59:10A-3 is the "catch-all" provision. Monmouth Cnty. Prosecutor's Off., 480 N.J. Super. at 41. N.J.S.A. 59:10A-3 states "[i]n any other action or proceeding, including criminal proceedings, the Attorney General may provide for the defense of a State employee or former State employee, if he concludes that such representation is in the best interest of the State." (emphasis added). This section has long been held to "vest[] the Attorney General with discretion to defend in cases not covered by N.J.S.A. 59:10A-1," including both criminal proceedings and civil actions that "seek a remedy other than tort damages." Chasin, 159 N.J. at 428. Section 10A-3's rationale is that "the OAG 'should have discretionary authority to furnish a defense for a state employee when the state interest would be served.'" Monmouth Cnty. Prosecutor's Off., 480 N.J. Super. at 41 (quoting Helduser v. Kimmelman, 191 N.J. Super. 493, 508 (App. Div. 1983)). When an Attorney General declines to use their discretionary authority under N.J.S.A. 59:10A-3,

14

the challenger "has a heavy burden to overcome the presumption that there has been no abuse of that discretion by the Attorney General." Napoleon, 303 N.J. Super. at 635.

In the context of the OAG's discretionary authority, we consider the disciplinary action against Dirkin.

Under N.J. Const. art. VI, § 2, ¶ 3, our Supreme Court is "given the power to permit the practice of law and to prohibit its unauthorized practice," including the ability to discipline people admitted. Sullivan as Tr. of Sylvester L. Sullivan Grantor Retained Income Tr. v. Max Spann Real Est. & Auction Co., 251 N.J. 45, 61 (2022) (quoting In re Op. No. 26 of the Comm. on the Unauthorized Prac. of L., 139 N.J. 323, 326 (1995)). The regulation of the practice of law is aimed at serving the public interest. See Sullivan, 251 N.J. at 61-62 ("Our authority to regulate 'the practice of law must be exercised in the public interest; more specifically, it is not a power given to us in order to protect lawyers, but in order to protect the public.'" (quoting In re Op. No. 26, 139 N.J. at 327)); Anchor L. Firm, PLLC v. State, 482 N.J. Super. 1, 30 (App. Div. 2025).

The District Ethics Committee, which is involved in investigating Dirkin's disciplinary action, has long been held to "act[] as an arm of the Supreme Court" when performing this function. O'Boyle v. Dist. I Ethics

Comm., 421 N.J. Super. 457, 466 (App. Div. 2011) (citing Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 433 (1982)). In implementing the attorney disciplinary system, our Court has held

> [t]he system as a whole is designed to foster a fair and effective process that enables the public to voice complaints about attorney behavior, empowers investigatory bodies to review and thoroughly investigate grievances, gives attorneys an opportunity to respond to allegations and defend themselves with vigor, and, in the end, protects the public from unethical conduct by unfit lawyers.
>
> [Robertelli v. N.J. Off. of Atty. Ethics, 224 N.J. 470, 477 (2016).]

We note that "[t]he Attorney General has long been vested with the responsibility of protecting the public interest and enforcing public duties . . . ." In re D.C., 146 N.J. 31, 48 (1996). Further, the "Attorney General functions as the sole legal advisor to State agencies and the chief law enforcement officer for criminal matters." N.J.A.C. 13:1E-1.1. The Attorney General must carefully consider its dual role as chief law enforcement officer and protector of the public interest when deciding to defend and indemnify a state employee using N.J.S.A. 59:10A-3's discretionary authority.

Under the TCA, the Attorney General can decline to defend a public employee when "the act or the failure to act was because of . . . willful misconduct . . . ." N.J.S.A. 59:10A-2(b). Here, the District VII Ethics

Committee's complaint against Dirkin is couched in terms of willful misconduct,[3] not negligence. The complaint stated there were "OPRA stamped documents" in Dirkin's file which showed that the defendant was a NJAI official under contract to provide services, not a volunteer. The complaint further alleged Dirkin violated RPC 3.8(d) by not presenting evidence of the contract between the defendant and NJAI to the grand jury which was "credible, material, and so clearly exculpatory" although he had it in his file.

As amicus, the County Prosecutors Association of New Jersey argues for reversal. Relying on In re Vey, they contend that the OAG's "one-line denial is wrong" and that it is "utterly insufficient to 'facilitate judicial review.'" 124 N.J. 534, 544 (1991). After a thorough review of the detailed record, including investigative materials from State v. Anderson and the District VII Ethics Committee, we conclude that there is sufficient evidence in the record to support the OAG's cogent final agency decision. The OAE's disciplinary

---

[3] Under the framework of the TCA, "willful misconduct has been defined as the 'commission of a forbidden act with actual knowledge that the act is forbidden.' It is conduct more egregious than ordinary negligence." Bernstein v. State, 411 N.J. Super. 316. 332 (App. Div. 2010) (internal citation omitted) (quoting Kollar v. Lozier, 286 N.J. Super. 462, 470 (App. Div. 1996)). Further, to show willful misconduct there must be a "'positive element of conscious wrongdoing. . . .' showing that there [was] . . . a deliberate act or omission with knowledge of a high degree of probability of harm and reckless indifference to consequences." Fielder v. Stonack, 141 N.J. 101, 124 (1995) (quoting Berg v. Reaction Motors Division, Thiokol Chemical Corp., 37 N.J. 396, 414 (1962)).

A-3379-24

complaint against Dirkin framed his actions in terms of willful misconduct, thus it was a permissible exercise of the OAG's discretion to decline to use its discretionary authority to represent Dirkin.

The OAG's discretionary decision under N.J.S.A. 59:10A-3 to deny Dirkin's request for representation and indemnification was not arbitrary, capricious, nor unreasonable.

C.

We turn to Dirkin's argument that the common law doctrine of respondeat superior requires the Attorney General to represent him. We are unpersuaded.

Under N.J.S.A. 59:10A-6, "[t]he authority granted to the Attorney General by [the TCA] shall be in addition to and not in derogation of his existing authority to represent and defend State employees and former State employees." In the statement accompanying this section of the TCA, the Legislature confirmed that "this authority is undoubtedly already possessed by the Attorney General under his existing powers, [thus] this amendment is intended to explicitly establish that authority and the circumstances under which it will be exercised." Sponsor's Statement to S. 993, (May 4, 1972) (emphasis added). Further, "[t]he language of [N.J.S.A. 59:10A-3] regarding 'any other action or proceeding,' including criminal proceeding, has been

construed as <u>preserving the Attorney General's pre-Act discretion</u> to undertake the defense of employees as he sees fit."  Margolis & Novack, <u>Title 59: Claims Against Pub. Entities</u>, cmt. on N.J.S.A. 59:10A-3 (2026) (emphasis added).

The doctrine of "[r]espondeat superior dates back to 'the seventeenth-century common law of England' and 'has long been part of New Jersey law.'" <u>G.A.-H. v. K.G.G.</u>, 238 N.J. 401, 415 (2019) (quoting <u>Davis v. Devereux Found.</u>, 209 N.J. 269, 287 (2012)).  For respondeat superior to be applicable to an employer, one "must prove the existence of an employer-employee relationship and that the employee's <u>tortious actions</u> 'occurred within the scope of that employment.'"  <u>Ibid.</u> (emphasis added) (quoting <u>Carter v. Reynolds</u>, 175 N.J. 402, 409 (2003)).  Dirkin's respondeat superior argument fails here, as the theory requires an underlying tortious act by the employee, in this case, Dirkin. The record clearly shows there is no tort claim from which to derive a claim for respondeat superior liability.

## D.

Finally, we decline to impose a common law duty on the Attorney General, under these circumstances.

Our Supreme Court has held "[i]n the exercise of their common-law jurisdiction, courts should seek to effectuate sound public policy and mold the

A-3379-24

law to embody the societal values that are exemplified by such public policy." New Jersey Div. of Youth & Fam. Servs. v. M.W., 398 N.J. Super. 266, 296 (App. Div. 2008) (quoting Carr v. Carr, 120 N.J. 336, 350 (1990)). In keeping with this, "courts should be responsive to legislation as expressive of public policy, which can serve to shape and add content to the common law, even though such legislative expressions may not be directly applicable or binding in the given matter." Fulton Bank of N.J. v. Casa Eleganza, LLC, 473 N.J. Super. 387, 399 (App. Div. 2022) (quoting Carr, 120 N.J. at 350).

Here, the legislative intent and public policy behind the TCA was clear when it was enacted. The TCA sections which provide for defense and indemnification of State employees were intended by the Legislature to establish rules for the Attorney General regarding representation of State employees for tortious conduct, "explicitly establish[ing] that authority and the circumstances under which it will be exercised." S. 993 (1972); Sponsor's Statement to S. 993 (May 4, 1972).

Moreover, our Court has construed the applicable sections to only require defense and indemnification in the context of tortious conduct. The attorney disciplinary action against Dirkin does not fit within the framework established by the legislature in the TCA and interpreted by the Supreme Court.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-3379-24