286 N.J. Super. 462 (1996)
669 A.2d 845
ELMER KOLLAR AND PATRICIA KOLLAR, CO-ADMINISTRATORS AD PROSEQUENDUM OF THE ESTATE OF MARK KOLLAR, AND ELMER KOLLAR AND PATRICIA KOLLAR, PLAINTIFFS-APPELLANTS,
v.
KENNETH LOZIER, DONALD DAWSON, MARIO MUSSO, ROBERT BUCHANAN, PRINCETON BOROUGH, PRINCETON TOWNSHIP, AND PRINCETON TESTING LABORATORIES, INC., DEFENDANTS-RESPONDENTS, AND CIRTON, INC., T/A CONTE'S BAR AND JOHN DOES I THROUGH X, DEFENDANTS.[1]
Superior Court of New Jersey, Appellate Division.
Submitted December 5, 1995.
Decided January 17, 1996.
*467 Before Judges DREIER, ARNOLD M. STEIN and CUFF.
Robert A. Ballard, Jr., attorney for appellants.
Hill Wallack, attorneys for respondent Kenneth Lozier (Gerard H. Hanson and Thomas F. Carroll, III, on the brief).
Lenox, Socey, Wilgus, Formidoni & Casey, attorneys for respondent Donald Dawson (George Wilgus, III, on the brief).
Garrigle and Palm, attorneys for respondents Mario Musso, Robert Buchanan and Princeton Township (William A. Garrigle, of counsel; Eleanore A. Rogalski on the brief).
Picco, Mack, Herbert, attorneys for respondent Princeton Borough (Steven P. Goodell, of counsel and on the brief; Michael W. Herbert on the brief).
Patti & Policastro, attorneys for respondent Princeton Testing Laboratories, Inc. (Steven P. Sona on the brief).
The opinion of the court was delivered by CUFF, J.A.D.
Mark Kollar died in a one-car accident soon after midnight on May 1, 1986. His parents, plaintiffs Elmer and Patricia Kollar, as co-administrators ad prosequendum and individually, commenced this action against the Princeton Borough police officers (defendants *468 Kenneth Lozier and Donald Dawson) who had commenced a chase prior to the accident, Princeton Borough, the Princeton Township police officers who investigated the accident (defendants Mario Musso and Robert Buchanan), Princeton Township, their son's employer (defendant Princeton Testing Laboratories, Inc.), and the bar where he had been prior to the accident (defendant Cirton, Inc., t/a Conte's Bar). The bar settled. After a protracted procedural history, several motions for summary judgment were granted and all state and federal claims against all defendants were dismissed.
On appeal, plaintiffs contend that the motion judges erred by applying the immunity provisions of the Tort Claims Act to bar their claims against Princeton Borough and its officers. They argue that the motion judges erred by dismissing their federal civil rights claims against defendant Princeton Borough and its officers and the respondeat superior claims against the Borough. They also contest the dismissal of the commercial host liability claims against decedent's employer and the dismissal of all state and federal claims against defendant Princeton Township and its investigatory officers. We affirm.
During the evening of April 30, 1986, Mark Kollar and some of his co-workers at Princeton Testing Laboratories participated in a softball game at a field in Princeton. After the game, they adjourned to Conte's Bar on Witherspoon Street in Princeton where they ate pizza and drank beer from approximately 8 p.m. until midnight.
Shortly before midnight, Kollar left the bar and mounted his motorcycle. At approximately 12:15 a.m., Kollar was travelling on Mercer Street in Princeton behind two cars. At about the same time that Kollar and the two preceding cars turned onto Alexander Road heading towards Route 1, defendants Lozier and Dawson of the Princeton Borough police were approaching the same intersection from the other direction. They also turned onto Alexander Road and were travelling behind Kollar.
*469 The officers observed Kollar's motorcycle weave from side to side, crossing into the opposite lane several times. As the four vehicles approached the intersection of Alexander Road and University Place, the first car turned left onto University Place and the officers activated their overhead lights to pull Kollar to the side of the road. Kollar, however, tried to pass the car immediately in front of him, narrowly avoided a collision with oncoming traffic, and swerved back behind the preceding car.
With lights and sirens activated on the police car, Kollar, the preceding car, and the police vehicle continued to travel on Alexander Road towards Princeton Township and Route 1. As the three vehicles approached the intersection of Alexander Road and Faculty Road, the first car pulled to the side of the road, but Kollar accelerated rapidly and ran a red light at the Alexander Road-Faculty Road intersection. The Princeton Borough officers continued their pursuit with siren and lights activated and radioed their headquarters to alert the West Windsor Township police that Kollar was headed in their direction. Within seconds, however, Kollar again accelerated his motorcycle to a speed estimated by onlookers as over 80 m.p.h., failed to negotiate the first turn, crossed the oncoming traffic lane and crashed into a guardrail.
When defendants Lozier and Dawson arrived at the scene, they found Kollar pinned face down to the ground and onto part of the guardrail by the motorcycle. Lozier radioed for help and obtained the first aid box. Dawson remained with Kollar trying to detect a pulse. Kollar was transported to a nearby hospital but was declared dead at 1:47 a.m.
Princeton Borough Police Sergeant William T. Clark, Lozier and Dawson's supervisor, arrived at the scene with the first aid squad. Soon thereafter, defendant Princeton Township Police Officer Buchanan and his supervisor, defendant Lieutenant Musso, arrived at the scene and began an investigation. Toxicology reports revealed that Kollar had a blood alcohol level of 0.108 percent and a brain alcohol level of 0.159 percent.
*470 Plaintiffs contend that Judge Judith Yaskin erroneously applied the immunity provisions of the Tort Claims Act, specifically N.J.S.A. 59:5-2b(2), to dismiss their state claims against Princeton Borough, Lozier and Dawson. They argue that their pursuit of Kollar violated a general order and, therefore, constituted willful misconduct.
General Order 83-3 of the Princeton Borough Police Department was promulgated to guide officers concerning pursuit of violators of the motor vehicle code. Generally, police officers are prohibited from initiating a high-speed pursuit based solely on a non-moving motor vehicle violation. If, however, the motor vehicle offender "presents a condition hazardous to the population at large because of the nature of the crime ... High Speed Pursuit is justified to make an arrest." The Attorney General had promulgated similar guidelines.
N.J.S.A. 59:5-2b(2) provides:
Neither a public entity nor a public employee is liable for:
* * * * * * * *
b. any injury caused by:
* * * * * * * *
(2) an escaping or escaped person.
This immunity has been extended to injuries resulting from police pursuits of persons who have failed to stop at police command. Tice v. Cramer, 133 N.J. 347, 360-63, 627 A.2d 1090 (1993); see also Fielder v. Stonack, 141 N.J. 101, 110, 661 A.2d 231 (1995) (police officers involved in a high-speed pursuit are immune from liability even when it is their vehicle which is involved in the collision). This immunity is absolute except in the event of willful misconduct by a public employee. Tice, supra, 133 N.J. at 367, 627 A.2d 1090.
For purposes of the Tort Claims Act, willful misconduct is much more than negligence. It is the commission of a forbidden act with actual knowledge that the act is forbidden. Marley v. Borough of Palmyra, 193 N.J. Super. 271, 294-95, 473 A.2d 554 *471 (Law Div. 1983). Recently, in Fielder v. Stonack, supra, the Supreme Court defined what constitutes "willful misconduct" in a police pursuit context. The Court stated:
[W]illful misconduct is ordinarily limited to a knowing violation of a specific command by a superior, or a standing order, that would subject that officer to discipline....
More particularly, willful misconduct in a police vehicular chase has two elements: 1) disobeying either a specific lawful command of a superior or a specific lawful standing order and 2) knowing of the command or standing order, knowing that it is being violated and, intending to violate it. Where the command or order is not only specific but clearly has no exceptions  expressed or implied  willful misconduct is not affected by the good faith of the public employee who believes he or she somehow had a right to knowingly and willfully disobey. (emphasis added).
[Fielder v. Stonack, supra, 141 N.J. at 125-26, 661 A.2d 231.]
In her analysis of the facts, Judge Yaskin drew all inferences in favor of the plaintiffs. She assumed, even though disputed, that the officers had activated the lights and siren on their patrol car and that the officers were travelling at speeds approaching 75 m.p.h. Nevertheless, the motion judge concluded that there was an absence of willful misconduct because there was no evidence that Lozier and Dawson knew of the specific terms of the general order and that they intended to violate it. Furthermore, under the terms of the order there was some question whether it was violated. We concur with Judge Yaskin's analysis of this issue. Without question, the record establishes that Lozier and Dawson were unaware of the specific terms of the order. Consequently, they could not form an intention to violate the order.
Moreover, we are not satisfied that General Order 83-3 set forth a specific command without any express or implied exceptions. While the general order expresses a strong statement that local police officers shall not engage in a high-speed chase over a minor non-moving motor vehicle violation, the order is replete with exceptions and the direction to the officers is to use their best judgment in the situation.
Furthermore, the general order seems to authorize a pursuit, if the motor vehicle infraction is serious and on-going. In this case, *472 Lozier and Dawson appropriately suspected that Kollar was driving while intoxicated. They had observed his motorcycle weave from side to side, crossing into the oncoming traffic lane on several occasions. They had seen him attempt an improvident passing maneuver in which he narrowly averted a collision with an oncoming van. Then he accelerated, ran a red light, accelerated again and sped away. Clearly, Kollar posed a threat not only to himself but also to others. We do not read General Order 83-3 to prohibit a pursuit in this situation. Thus, we cannot envision how Lozier and Dawson's actions could be considered a violation of the general order. Without a knowing violation of an unequivocal order there can be no willful misconduct. Therefore, Judge Yaskin properly dismissed the state law claims against defendants Lozier and Dawson.
Similarly, the Tort Claims Act claims against defendant Princeton Borough were also properly dismissed. Plaintiffs' claims against the Borough rest on a respondeat superior theory. However, in this case its employees, Lozier and Dawson, are immune from liability pursuant to N.J.S.A. 59:5-2b(2) and the Borough is entitled to the same immunity. Furthermore, even if the willful misconduct exception applied to the conduct of Lozier and Dawson, the Borough would still be entitled to the 5-2b(2) immunity. The Tort Claims Act specifically provides that a public entity shall not be liable for any acts of an employee which constitute willful misconduct. N.J.S.A. 59:2-10.
Finally, as to the Princeton Borough defendants, plaintiffs contest the dismissal of their federal civil rights claims. Judge Yaskin concluded that the conduct of the officers satisfied neither the "shock the conscience" standard nor the "reckless indifference" standard to establish liability pursuant to 42 U.S.C.A. § 1983.
42 U.S.C.A. § 1983 creates a "species of tort liability" in favor of persons who are deprived of rights, privileges or immunities secured to them by the Constitution. Carey v. Piphus, 435 U.S. 247, 253, 98 S.Ct. 1042, 1047, 55 L.Ed.2d 252, 258 (1978). *473 Claims brought under the Tort Claims Act are independent from claims brought under 42 U.S.C.A. § 1983. Thus, a claim which falls into a state tort claims act immunity may succeed on a federal civil rights violation theory. Tice, supra, 133 N.J. at 375, 627 A.2d 1090; see also Fielder, supra, 141 N.J. at 133, 661 A.2d 231.
In order to prove a claim under 42 U.S.C.A. § 1983, a plaintiff must show a violation of a right secured by the Constitution or laws of the United States committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48-49, 108 S.Ct. 2250, 2254-55, 101 L.Ed.2d 40, 48-49 (1988); Kirk v. City of Newark, 109 N.J. 173, 185, 536 A.2d 229 (1988). In this case, it is undisputed that the Borough officers were acting under color of state law. The issue in this case is whether the pursuit of Kollar violated his Fourteenth Amendment right to substantive due process.
Over the years, two standards have developed to determine whether police conduct violated the Due Process Clause of the Fourteenth Amendment: 1) reckless indifference or gross negligence, and 2) conduct which shocks the conscience of the court. In Fielder, the Court stated in dicta that federal civil rights liability can be established only for conduct which shocks the conscience of the court. Fielder, supra, 141 N.J. at 134, 661 A.2d 231. Recently, the United States Court of Appeals for the Third Circuit adopted a similar standard. Fagan v. City of Vineland, 22 F.3d 1296, 1306-07 (3d Cir.1994).
Applying the "shocks the conscience" standard to the facts of this case compels a conclusion that there can be no federal civil rights liability for the conduct of Lozier and Dawson. These officers engaged in a pursuit of a drunken driver who had narrowly avoided a head-on collision while trying to execute an improvident pass of the preceding vehicle. The driver then accelerated and ran a red light, thereby jeopardizing the safety of the occupants of other vehicles. While Kollar's death was shocking, the behavior of the Borough police officers was a normal response to an evolving, serious motor vehicle situation. See Temkin v. Frederick *474 Cty. Comm'rs, 945 F.2d 716 (4th Cir.1991) (a high-speed chase over ten miles precipitated by the theft of $17 of gasoline, which was not monitored as required by the supervising officer, does not meet the "shock the conscience" standard), cert. denied, 502 U.S. 1095, 112 S.Ct. 1172, 117 L.Ed.2d 417 (1992). Accordingly, Judge Yaskin properly dismissed these claims against Lozier and Dawson.
Likewise, the federal civil rights claims against the Borough were also properly dismissed. Plaintiffs had abandoned prior claims that the Borough had negligently trained its officers. Therefore, only a respondeat superior of liability remained. A municipality cannot be liable for federal civil rights violations solely on a respondeat superior basis. See Monell v. Department of Social Servs. of the City of New York, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611, 636 (1978); Fagan v. City of Vineland, 22 F.3d 1283, 1291 (3d Cir.1994). Only when the execution of a government custom or policy deprives a person of his rights as a citizen may § 1983 liability be imposed on a municipality.
Plaintiffs also argue that Judge Andrew Smithson erroneously dismissed their state and federal claims against defendants Princeton Township, Musso and Buchanan. Plaintiffs claim that these defendants, who conducted the accident investigation, overlooked critical evidence and failed to immediately question all witnesses. They claim that this constituted willful, wanton, and reckless failure to discharge their duties and violated procedural and substantive due process guarantees.
Plaintiffs' state law claims were predicated on an alleged cover-up by the investigating officers. Judge Smithson found that the record not only failed to establish a genuine issue of material fact concerning a cover-up but also failed to support that contention at all. Viewing the evidence presented in the light most favorable to plaintiffs, Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523, 666 A.2d 146 (1995), we agree that plaintiffs failed to raise a genuine issue of material fact that a cover-up existed among the investigating officers or that they had failed to discharge *475 their investigatory duties. Therefore, summary judgment was properly granted in favor of the Township defendants by Judge Smithson.
Judge Smithson also dismissed the federal civil rights claims against the Township, Musso and Buchanan. He correctly ruled that a person's civil rights cannot be violated after death. Silkwood v. Kerr-McGee Corp., 637 F.2d 743, 749 (10th Cir.1980), cert. denied, 454 U.S. 833, 102 S.Ct. 132, 70 L.Ed.2d 111 (1981); Guyton v. Phillips, 606 F.2d 248, 250-51 (9th Cir.1979), cert. denied, 445 U.S. 916, 100 S.Ct. 1276, 63 L.Ed.2d 600 (1980); Whitehurst v. Wright, 592 F.2d 834, 840-41 (5th Cir.1979); see also Hauptmann v. Wilentz, 570 F. Supp. 351, 364 (D.N.J. 1983) (concealment of evidence that is viewed as a separate act which occurs after death cannot survive as a cause of action under 42 U.S.C.A. § 1983), aff'd, 770 F.2d 1070 (3d Cir.1985), cert. denied, 474 U.S. 1103, 106 S.Ct. 887, 88 L.Ed.2d 922 (1986).
Finally, plaintiffs urge that Judge Yaskin improperly dismissed their claim against decedent's employer, Princeton Testing Laboratories. They argue that a business should be held to the same standard of liability as licensed tavern owners with respect to liability for damages caused by a customer to whom they served alcoholic beverages. Plaintiffs concede that decedent consumed the alcoholic beverages at a bar. They urge that his employer should be held liable because the company provided the encouragement and impetus for the softball game and post-game pizza and beer, decedent discussed his work performance at the post-game gathering, his supervisors encouraged him to stay longer at the bar, and his superiors in attendance at the post-game gathering had a duty to see that no harm came to him.
Based on a record which showed that the employer did not pay for the food and drink, and that the employer had no control over the dispensation of alcohol at the bar, Judge Yaskin found that the post-game festivities were not a company function and dismissed the claims against decedent's employer. Viewing the record in the light most favorable to the plaintiffs, the *476 evidence is uncontroverted that decedent's employer was not a "host" within the meaning of the social host liability principle. See Kelly v. Gwinnell, 96 N.J. 538, 548, 476 A.2d 1219 (1984).
Moreover, a statute enacted after this accident which bars social host liability in one-party situations provides an even more compelling reason to affirm Judge Yaskin's ruling. In response to Kelly v. Gwinnell, supra, the Legislature enacted N.J.S.A. 2A:15-5.5 to 5.8 which codifies social host liability. Notably, N.J.S.A. 2A:15-5.7 provides that a social host is not liable to an adult who suffers personal injuries as a result of a social host's negligent provision of alcoholic beverages to that person. Furthermore, this statute, effective January 1988, is to be applied retroactively. Finer v. Talbot, 230 N.J. Super. 19, 21, 552 A.2d 626 (App.Div. 1988), certif. denied, 115 N.J. 58, 556 A.2d 1205 (1989). Thus, summary judgment was properly granted in favor of Princeton Testing Laboratories.[2]
The orders dated October 15, 1993 and April 19, 1994 filed by Judge Yaskin and the order dated September 19, 1990 filed by Judge Smithson are affirmed.
NOTES
[1] The caption on plaintiffs' brief and notice of appeal corresponds to the named defendants in the original complaint. Defendants were subsequently changed by an amended complaint. The caption used on this opinion reflects the appropriate parties as established by plaintiffs' amended complaint and by their status in this appeal.
[2] We also question whether commercial host liability can be imposed on the employer through business associates of the decedent. See Anslinger v. Martinsville Inn, Inc., 121 N.J. Super. 525, 529-31, 534, 298 A.2d 84 (App.Div. 1972), certif. denied, 62 N.J. 334, 301 A.2d 449 (1973).