**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2648-17T1

WINBERRY REALTY
PARTNERSHIP, JOHN
WINBERRY, MARY
LOURDES WINBERRY,
CELESTE WINBERRY,
and GREGORY WINBERRY,

      Plaintiffs-Appellants,

v.

BOROUGH OF RUTHERFORD,
and CARYN MILLER, in her
official and individual capacities,

      Defendants-Respondents,

and

STEVEN KRISCH, in his
individual capacity,

      Defendant.

_____

Argued March 6, 2019 – Decided May 31, 2019

Before Judges Alvarez and Nugent.

On appeal from Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-7126-10.

Bruce D. Greenberg argued the cause for appellants (Lite DePalma Greenberg, LLC, attorneys; Bruce D. Greenberg, on the briefs).

Kathy A. Kennedy argued the cause for respondents (Hanrahan Pack, LLC, attorneys; Thomas B. Hanrahan, of counsel and on the brief; Kathy A. Kennedy, on the brief).

PER CURIAM

Plaintiffs Winberry Realty Partnership (the Partnership), John Winberry (Winberry), Mary Lourdes Winberry, Celeste Winberry, and Gregory Winberry, on July 22, 2010, filed a complaint against defendants, the Borough of Rutherford and Caryn Miller, in her official and individual capacity,[1] alleging six different causes of action for damages arising from Miller's refusal to calculate the payoff figure in satisfaction of a tax sale certificate and foreclosure judgment on the Partnership's property. It is difficult to understand how this has occurred, but in the intervening nine years the matter has never even been listed for trial. The complaint was dismissed once with prejudice for the Partnership's failure to comply with discovery requests—an order we reversed—and summary judgment was then granted to defendants—an order also reversed on appeal. We

---

[1] Steven Krisch was dismissed from the case in 2011.

2

A-2648-17T1

now again reverse the trial court's grant of summary judgment. The judge seemingly applied a mistaken notion of the conduct necessary in order to strip qualified immunity from a public official.

The reader is referred to the two prior unpublished opinions for a more detailed description of events leading to this decision. Winberry Realty P'ship v. Borough of Rutherford, No. A-3846-13 (App. Div. May 4, 2016) (hereafter Winberry II); Winberry Realty P'ship v. Borough of Rutherford, No. A-5760-11 (App. Div. Aug. 9, 2013) (hereafter Winberry I).

Suffice it to say for our purposes that defendant's second application for summary judgment, which resulted in this appeal, was made on virtually the same basis as the first, and granted on virtually the same basis as the first. This despite the fact that post-discovery, it is abundantly clear that there are disputes of material fact that mandate the matter be decided by a jury.

On July 23, 2008, Winberry called Miller to obtain the payoff amount, so the Partnership could redeem the tax sale certificate and vacate the judgment on its property. July 23 was the day before final judgment would enter in the tax sale foreclosure matter.

When deposed, Winberry testified that when he called the Borough Tax Office, Miller told him she could not provide the payoff figure because she did

not have the time that day.  Winberry asked for the per diem rate so that he could calculate the amount himself—but Miller said she had no time for that.  After Winberry offered to pay any amount in order to redeem, Miller asked him why the outstanding amount had not been paid earlier, before telling him that she did not have the authority to accept the money regardless because the deadline had already passed.

In Miller's interrogatory answers, she said her recollection was limited, but that she could not help Winberry because the figures were unavailable.  She denied telling Winberry that he could not pay an amount in excess of the lien, or hearing him say that he could pay the entire amount owed.  According to her "limited recollection," she could not help Winberry redeem the property because she did not have the figures available:  "[Winberry] had contacted my office seeking information concerning the redemption of the [p]roperty.  I had informed [Winberry] that I was unable to provide him with the information he sought at that time.  I do not recall anything further."

At deposition, while reiterating that she could not remember the relevant events, Miller explained that she had developed her own policy for the redemption of property by delinquent tax owners.  The policy required the applicant to submit the request in writing, allowing Miller time to prepare the

figures. She would then contact the lienholder to ensure that all parties were in agreement. Miller could not remember if she had informed Winberry of this policy during their phone conversation. She also admitted that the software in her office provided payoff information within minutes.

Nearly a year later, once the Partnership retained counsel, it successfully applied to vacate the final foreclosure judgment and redeemed the tax sale certificate. This complaint followed.

In rendering his decision granting defendants' summary judgment, the judge said:

> Miller performed her duties as the Borough's Tax Collector in an objectively reasonable manner and therefore enjoy[ed] qualified immunity. No information supplied by the [p]laintiffs since this matter has been remanded has shown that . . . Miller acted in an unreasonable manner. . . . There is no evidence that the denial was a malicious, intentional act so as to pierce the qualified immunity . . . .
>
> This court is also unconvinced that the existence of an informal policy to check with the lienholder's attorney or representative before the generation of a payoff figure rises to the level of an unreasonable, intentional, or malicious action required to pierce immunity, let alone a Borough policy which has systematically resulted in the deprivation of civil rights.
>
> . . . .

A-2648-17T1

In sum, the [p]laintiffs have failed, despite their opportunity to conduct additional discovery for over a year, to show any facts which would abrogate the immunity generally enjoyed by the [d]efendants in this case, and would thus create a genuine issue of material fact. Thus, the court must grant the [d]efendants' motion for summary judgment and deny the [p]laintiffs' cross-motion.

On appeal, the Partnership raises the following points:

POINT I
THE LAW DIVISION WRONGLY DISREGARDED THIS COURT'S PREVIOUS OPINION HOLDING THAT GENUINE ISSUES OF MATERIAL FACT PRECLUDED SUMMARY JUDGMENT BASED ON QUALIFIED IMMUNITY.

POINT II
EVEN IF THIS COURT HAD NOT ALREADY RULED THAT MR. WINBERRY'S TESTIMONY BY ITSELF CREATED GENUINE ISSUES OF MATERIAL FACT, THE RECORD ON REMAND ESTABLISHED THAT THERE WERE SUCH GENUINE ISSUES, WHICH PRECLUDED SUMMARY JUDGMENT.

A. The Law Division Erred in its Treatment of the Facts.

B. The Law Division Erred in [i]ts Application of the Law.

POINT III
THE SUMMARY JUDGMENT IN FAVOR OF THE BOROUGH SHOULD BE REVERSED, BECAUSE THE TAX COLLECTOR'S ACTIONS AGAINST PLAINTIFFS EMBODIED A POLICY OF THE

6

BOROUGH FOR WHICH THE BOROUGH IS LIABLE UNDER THE FEDERAL AND NEW JERSEY CIVIL RIGHTS ACTS.

POINT IV
THE LAW DIVISION ERRED IN FAILING TO GRANT PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT ON LIABILITY.

POINT V
THE LAW DIVISION ERRED IN FAILING TO GRANT PLAINTIFFS' MOTION TO COMPEL DISCOVERY.

I.

The judge's factual and legal determination, based on competing answers in discovery, that Miller was immune because she acted reasonably and without malice had no foundation in the law. Furthermore, he did not view the evidence in favor of the non-moving party, as he was required to do on a motion for summary judgment. See Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

"Qualified immunity is a doctrine that shields government officials from a suit for civil damages when 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Gormley v. Wood-El, 218 N.J. 72, 113 (2014) (emphasis added) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Thus, qualified

7

immunity may shield an officer from liability if the officer "reasonably believes that his or her conduct complies with the law." Pearson v. Callahan, 555 U.S. 223, 244 (2009).

The doctrine's applicability may also depend on the distinction between a public official's discretionary and ministerial acts. Harlow, 457 U.S. at 816. An act is considered ministerial if it is performed "to the mandate of legal authority, without regard to or the exercise of . . . [discretion] upon the propriety of the act being done." Henebema v. S. Jersey Transp. Auth., 430 N.J. Super. 485, 502 (App. Div. 2013) (quoting Morey v. Palmer, 232 N.J. Super. 144, 151 (App. Div. 1989)).

"Whether an official is covered by qualified immunity is a matter of law to be decided by a court, 'preferably on a properly supported motion for summary judgment or dismissal.'" Gormley, 218 N.J. at 113 (quoting Wildoner v. Borough of Ramsey, 162 N.J. 375, 387 (2000)). Moreover, there is no presumption of qualified immunity; rather, the immunity is considered "an affirmative defense that the defendant must establish." Schneider v. Simonini, 163 N.J. 336, 354 (2000).

To begin, Miller's informal policy was objectively unreasonable. It was her statutory, ministerial obligation to provide the information Winberry

requested without delay or consultation with the purchasers of the tax sale certificate. Certainly, the statute states that a request for redemption calculation be made in writing. See N.J.S.A. 54:5-54. But Miller never informed Winberry that he needed to submit his request in writing, nor was that the reason she denied his request. She denied his request because she was implementing a policy that she developed and instituted on her own, without statutory authority to do so. According to Winberry, she responded to his inquiry by telling him she did not have the time to help, and she refused to accept any sum of money for redemption.

Miller's "discretionary policy" thus ran afoul of the Partnership's right to redeem its property pursuant to N.J.S.A. 54:5-54, not to mention the court order in the tax foreclosure matter. Rather than assisting Winberry, she put him off without providing him with the information it was her job to provide.

As we said in our prior decision reversing summary judgment in this matter, "[i]f, as Winberry asserts, Miller refused to timely redeem the tax sale certificate — not during the specific phone call, but at all — notwithstanding Winberry's established right to do so, then the doctrine of qualified immunity would not be available to her." Winberry II, slip op. at 14. To have refused Winberry's request when her computer could produce the requested figure

within minutes was patently and objectively unreasonable.  See Pearson, 555 U.S. at 244.

Furthermore, once the Partnership elected to exercise the legal right to redemption, any obstruction created by a public official's failure to fulfill her ministerial duties was inherently unreasonable.  The issue of whether qualified immunity exists is ordinarily best reserved for summary judgment.  In this case, however, the disputed material facts raise questions of who to believe and what to believe, best left to a factfinder.  See Gormley, 218 N.J. at 113.

None of the exceptions to the doctrine of qualified immunity applied here.  As a tax collector charged with knowing the law and fulfilling her ministerial duties, Miller should have known, assuming Winberry's facts are considered to be true, that her conduct violated the Partnership's rights.

Defendants argue that Miller's refusal to assist was protected by qualified immunity in part because it was discretionary conduct.  This argument is incorrect.

An act is considered ministerial if it is performed "to the mandate of legal authority, without regard to or the exercise of . . . [discretion] upon the propriety of the act being done."  Henebema, 430 N.J. Super. at 502 (quoting Morey, 232 N.J. Super. at 151).  Although Miller would have a general claim for immunity

if her action had truly been discretionary, her refusal to permit Winberry to redeem conflicted with her ministerial obligations, which she chose to disregard in favor of her informal policy. Winberry was legally entitled to an answer within a reasonable time. Thus, her decision to disregard the law was not discretionary.

## II.

The Partnership next contends that the Borough is liable through the actions and policies of Miller. More specifically, because Miller's informal policy of contacting the lienholder prior to providing a redemption figure violated the Tax Sale Law and the Partnership's rights under 42 U.S.C. § 1983 and N.J.S.A. 10:6-2, the Borough should also be liable. A government entity, however, cannot be held liable for the actions of its employees purely under the theory of respondeat superior. Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 694 (1978); Bayer v. Twp. of Union, 414 N.J. Super. 238, 270 (App. Div. 2010).

Two Civil Rights Acts are pertinent to this appeal. First, "[g]enerally speaking, [42 U.S.C. § 1983] provides a cause of action in state or federal courts to redress federal constitutional and statutory violations by state officials." GMC v. City of Linden, 143 N.J. 336, 341 (1996). Thus, in order to allege a

11

claim under to 42 U.S.C. § 1983, a plaintiff must show "a violation of a right secured by the Constitution or laws of the United States committed by a person acting under color of state law." Bernstein v. State, 411 N.J. Super. 316, 335 (App. Div. 2010) (citing Kollar v. Lozier, 286 N.J. Super. 462, 473 (App. Div. 1996)).

A state official acting within an official capacity "is immune from § 1983 damages-liability," as the official is not considered a "person" under the statute. Id. at 336 (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)). A local governmental entity, on the other hand, is deemed a person under the statute if the alleged unconstitutional action was implemented, executed, or adopted by its officers. Monell, 436 U.S. at 690; Bayer, 414 N.J. Super. at 270. There is no action, however, for wrongs committed by State employees "solely on a theory of respondeat superior." Bayer, 414 N.J. Super. at 270. Rather, municipal liability is reserved for when "execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible [for] under § 1983." Monell, 436 U.S. at 694.

Second, analogous to 42 U.S.C. § 1983, the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 to -2, was adopted "for the broad purpose of assuring a state law cause of action for violations of state and federal constitutional rights and to fill

any gaps in state statutory anti-discrimination protection." Ramos v. Flowers, 429 N.J. Super. 13, 21 (App. Div. 2012) (quoting Owens v. Feigin, 194 N.J. 607, 611 (2008)). The Act contains two types of claims, one for any deprivation of a right, and another for when rights are "interfered with, by threats, intimidation or coercion by a person acting under color of law[.]" Ibid. (quoting N.J.S.A. 10:6-2(c)).

It is undisputed that the Parnership was initially deprived of the right to redemption under N.J.S.A. 54:5-54. This deprivation was committed by Miller, a government official acting under color of law. See Bernstein, 411 N.J. Super. at 335. For this reason alone, the Parnership submits that the Borough is liable for Miller's actions. But the Borough itself is not liable because it did not inflict injury as an entity, had no knowledge of it, or participation in it. See Monell, 436 U.S. at 690; Bayer, 414 N.J. Super. at 270. Miller's policy was not the Borough's policy, thus the Borough should not be held vicariously liable.

III.

The Parnership argues that because there is no genuine issue of material fact that defendants deprived it of the statutory right of redemption, a summary judgment as to liability is warranted. But the facts relied upon for liability come from interrogatory answers and depositions from witnesses in which the

13

circumstances are in dispute. Because the issue of liability remains factually contested, summary judgment would have been improper and was correctly denied to the Partnership at this stage.

Motions for summary judgment are reserved for circumstances where "there is no genuine issue as to any material fact challenged" and the moving party is entitled to judgment "as a matter of law." R. 4:46-2(c). In considering a motion for summary judgment, the judge must determine whether "the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill, 142 N.J. at 540.

Depositions may be utilized to decide whether a genuine issue of material fact exists. See R. 4:46-2(c). Here, the Partnership points to Winberry's deposition as definitive proof that Miller was liable, and further suggest that because the Partnership had an established right to redeem the property, the only question left to the court is whether Miller's action was objectively reasonable. Just because Miller could not recall certain events, does not definitively prove those events occurred as the Partnership perceived them. Viewing the evidence

14

in favor of the non-moving party does not nullify the conflicts of fact. <u>See</u> <u>Brill</u>, 142 N.J. at 540. Liability cannot be ruled on given this record.

IV.

Finally, the Partnership contends that their motion to compel discovery should not have been dismissed as moot. The discovery request concerns a questionnaire that Winberry completed for defendants' expert, who then generated a report. That report was provided to the Partnership, and it had, according to the record on appeal, notice that if they did not inform the expert that they wanted a copy of the questionnaire, it would be destroyed in the ordinary course.

This motion to compel was made after the expiration of the discovery period and after the Partnership was advised that the document would be destroyed if not earlier requested. Since the request was made almost a year after the discovery period and the Partnership has a copy of the full report, the motion was properly dismissed for reasons other than being moot.

To summarize, we affirm summary judgment granted to the Borough, reverse summary judgment granted to Miller, as there are disputed material facts that did not approximate establishing that she engaged in a discretionary act, and

A-2648-17T1

we affirm the order denying additional discovery and for discovery sanctions.

The matter will be returned for trial and scheduled promptly.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2648-17T1