754 A.2d 558 (2000)
333 N.J. Super. 1
GE CAPITAL MORTGAGE SERVICES, INC., Successor in interest to State Street Bank & Trust Company, Plaintiff-Appellant,
v.
NEW JERSEY TITLE INSURANCE COMPANY, Robert Nils Herdelin, New Jersey Mortgage & Investment Corp. and New Jersey Lawyers Fund for Client Protection, Defendants-Respondents, and
Joseph Privetera and First American Title Insurance Company, Defendants.
Superior Court of New Jersey, Appellate Division.
Submitted June 14, 2000.
Decided July 10, 2000.
Fein, Such, Kahn & Shepard, Parsippany, for plaintiff-appellant; Gregg P. Tabakin, on the brief.
Slavitt & Cowen, Newark, for defendants-respondents New Jersey Title Insurance Company and New Jersey Mortgage & Investment Corp.; Ben J. Slavitt, of counsel.
Grossman, Kruttschnitt, Heavey & Javcob, Brick, for respondent Robert N. Herdelin; Richard A. Grossman, of counsel; Thomas A. Morrone, on the brief.
*559 Daniel R. Hendi, Senior Counsel, Trenton, for respondent New Jersey Lawyers' Fund for Client Protection; Mr. Hendi, on the brief.
Before Judges KING and MUIR.
The opinion of the court was delivered by KING, P.J.A.D.

I
This case involves a claim against the New Jersey Lawyers' Fund for Client Protection (Fund). R. 1:28. We conclude that the Fund may not be sued in Superior Court by a disappointed claimant and we grant summary disposition in favor of the Fund, affirming Judge Callinan. See R. 2:8-3(b).

II
On August 1, 1994 James and Nancy Hudanich defaulted on a note in the principal amount of $650,000 which was held by plaintiff GE Capital Mortgage Services Inc. (GE Capital), and secured by a first mortgage on real property known as 4198 Bayberry Road, Avalon, Cape May County. The Hudaniches subsequently filed a Chapter 11 bankruptcy petition and then secured an order from the bankruptcy court approving the private sale of the property to Robert Herdelin, free and clear of all liens, and directing that any existing liens would thereafter attach to the proceeds of the sale. The order further provided that the sales proceeds were to be placed in escrow pending the resolution of all priority disputes.
At the closing on June 19, 1996 Herdelin was represented by Joseph Privetera, an attorney admitted to the New Jersey bar since 1966. No one appeared on behalf of plaintiff, apparently due to the failure of the other parties involved to give notice of the closing date. The proceeds of the sale, $694,146.75, were collected by Privetera for placement in his escrow account.
On November 13, 1996, following the resolution of the outstanding priority dispute, the bankruptcy court entered a consent order authorizing the disbursement of the sale proceeds, which was forwarded by plaintiff's counsel to Privetera on November 26, 1996. On December 3, 1996 Privetera appeared at plaintiff's counsel's office and confessed that he had misappropriated all of the proceeds from the closing. Plaintiff then moved before the bankruptcy court for the reimposition of its lien against the property. Plaintiff's motion was denied. Privetera later was criminally convicted, imprisoned and disbarred.
On February 6, 1997 plaintiff filed a claim with the Fund seeking reimbursement of some of the monies misappropriated by Privetera. Plaintiff was advised by a Fund representative that the Fund might not be able to consider its claim because of the apparent lack of an attorney-client relationship between plaintiff and Privetera, and the strong possibility that plaintiff could recover its loss in full from collateral sources. To date, plaintiff's claim apparently remains unresolved.
On July 7, 1997 plaintiff filed an amended verified complaint with the Superior Court of New Jersey, Chancery Division, against the parties involved in the subject transaction, as well as the Fund. As to the Fund, plaintiff alleged that it had suffered a loss as a result of Privetera's dishonest conduct and demanded that it be declared a proper claimant against the Fund and that the Fund be ordered to recognize and pay its claim.
On August 7, 1997 the Fund filed a motion to dismiss plaintiff's complaint against it for lack of subject matter jurisdiction. Judge Callinan ruled that the Supreme Court, and not the Law Division, had jurisdiction over this matter. The judge dismissed plaintiff's complaint against the Fund without prejudice.
On October 22, 1999 plaintiff GE Capital filed a notice of appeal with this court with regard to the entirety of its suit, the remainder of which had been dismissed by summary judgment. The Fund now *560 moves for summary affirmance of Judge Callinan's order dismissing plaintiff's complaint against it.

III
The Fund contends that, because jurisdiction over claims made against the Fund is vested exclusively with the Fund's Board of Trustees, Judge Callinan's order dismissing plaintiff's complaint against the Fund for lack of subject matter jurisdiction was entirely proper and should be summarily affirmed. In response, plaintiff argues that the rules concerning the Fund do not render it immune from suit, that both the Fund and a claimant are entitled to equal access to the court system, and that, if necessary, the rules concerning the Fund should be relaxed to permit such suits in order to ensure that the Fund's goal of compensating those wronged by a member of the bar is met. We agree with the Fund.
The summary disposition procedure is reserved for appeals whose ultimate outcome is so clear as not to require further briefs or a full record for decision. The procedure is intended to provide a pre-transcript, pre-argument opportunity for the screening of those cases involving issues which are clear-cut or which demonstrate that the decision on appeal was patently in error. Pressler, Current N .J. Court Rules, comment 2 on R. 2:8-3(b) (2000).
Under our State Constitution, the Supreme Court is vested with exclusive authority over the regulation of the Bar. N.J. Const. art. VI, § 2, ¶ 3; In re LiVolsi, 85 N.J. 576, 583, 428 A.2d 1268 (1981) (direct petition to Supreme Court). Pursuant to this authority, the Court created the Fund for the express purpose of reimbursing, to a certain extent, the losses caused by the dishonest conduct of members of the New Jersey bar. R. 1:28-1(a). Notably, though, the Court mandated that "[n]o claimant or any other person or organization shall have any right in the Fund as beneficiary or otherwise." R. 1:28-3(d). Rather, the Court directed it would be within the "sole discretion" of the seven trustees appointed to administer and operate the Fund to determine "which eligible claims merit reimbursement from the Fund and the amount, time, manner, conditions and order of payment of reimbursement." R. 1:28-3(b);[1]see N.J. Lawyers' Fund v. First Fid. Bank, 303 N.J.Super. 208, 210-11, 696 A.2d 728 (App.Div.1997).
Plaintiff insists that it should be permitted to utilize the court system to establish a viable and enforceable claim against the Fund. This proposed collateral approach would directly violate the procedure established by our Supreme Court for the processing of such claims. Because the Fund is wholly a creature of the Supreme Court, the Court should determine whether alternate procedures may be followed in order to pursue a claim against the Fund.
Contrary to plaintiff's contention, the mere fact that R. 1:28-2(f) specifically grants immunity from suit to the Fund's trustees and personnel will not be interpreted as an inferential endorsement by the Supreme Court of direct claims against *561 the Fund in the trial divisions. We will not permit such a dramatic abrogation of the procedures established by R. 1:28-1 to -9 without express sanction of the Supreme Court. Likewise, the fact that the Fund may apply to the Supreme Court for interpretation of its existing and operating rules, see R. 1:28-4(b), does not warrant the conclusion that the Fund is amenable to plaintiff's claims in the Law Division. Moreover, the novel jurisdictional and public policy implications of permitting direct claims against the Fund in the Law Division go beyond the conventional rule relaxation contemplated by R. 1:1-2 and would intrude improperly on matters clearly vested in the Fund by the Supreme Court.
Plaintiff's claim that a substantial injustice will result if it is denied the "opportunity to proceed against `the Fund'" in the Superior Court is without merit. Plaintiff has filed a proper claim with the Fund and, as such, stands in the same position as all other claimants, none of whom have any "right" to a recovery. Further, not only do the rules pertaining to the Fund fail to provide for a judicial appeal process but, as the Fund points out, our Supreme Court has observed, in the context of mandatory fee arbitration, that "permitting appeals from judicially created agencies to the Superior Court would be inconsistent with this Court's exclusive constitutional authority over the regulation of the Bar." In re LiVolsi, 85 N.J. at 593, 428 A.2d 1268; see also In re Logan, 70 N.J. 222, 228, 358 A.2d 787 (1976) ("[T]he right of appeal is not essential to due process").
Affirmed as to ruling against plaintiff and in favor of the Fund.
NOTES
[1] R. 1:28-3(b) states:

(b) Consideration of Claims. The trustees in their sole discretion but on the affirmative vote of 4 of them shall determine which eligible claims merit reimbursement from the Fund and the amount, time, manner, conditions and order of payment of reimbursement. In making such determinations the trustees shall consider, among other appropriate factors, the following:
(1) The amounts available and likely to become available to the Fund for the payment of claims and the size and number of claims which are likely to be presented;
(2) The amount of the claimant's loss as compared with the amount of losses sustained by other eligible claimants;
(3) The degree of hardship suffered by the claimant as a result of the loss;
(4) The degree of negligence, if any, of the claimant which may have contributed to the loss;
(5) The potential for recovery from a collateral source.