24 A.3d 809 (2011)
421 N.J. Super. 457
Martin O'BOYLE, Plaintiff-Appellant,
v.
DISTRICT I ETHICS COMMITTEE; the Director of the Office of Attorney Ethics, Charles Centinaro, Esq., in his Official capacity only; and the Supreme Court of New Jersey, Defendants-Respondents.
No. A-4599-09T4.
Superior Court of New Jersey, Appellate Division.
Argued November 17, 2010.
Decided August 12, 2011.
*811 Donald M. Doherty, Jr., argued the cause for appellant (Friedman Doherty, LLC, West Berlin, attorneys; Mr. Doherty, on the briefs).
Matthew Sapienza, Deputy Attorney General, argued the cause for respondents (Paula T. Dow, Attorney General, attorney; Lewis A. Scheindlin, Assistant Attorney General, of counsel; Mr. Sapienza, on the brief).
Before Judges AXELRAD, R.B. COLEMAN and J.N. HARRIS.
The opinion of the court was delivered by
AXELRAD, P.J.A.D.
Rule 1:20-3(h) provides that in cases where a grievance that was found by the district ethics committee to allege unethical behavior was docketed and dismissed following an investigation, a grievant may appeal that decision to the Disciplinary Review Board ("Board"). In contrast, Rule 1:20-3(e)(3) allows the secretary of a district ethics committee to decline to docket a grievance against an attorney which the secretary, with the concurrence of a public member, has determined fails to allege conduct violative of the Rules of Professional Conduct ("RPC"). The issue presented in this appeal is whether Rule 1:20-3(e)(6), which precludes an appeal of an undocketed grievance, violates a grievant's right to due process or equal protection of the laws. As the plaintiff-grievant fails to assert a viable constitutional basis for his challenge, we affirm the Law Division's dismissal of his complaint.

I.
Plaintiff Martin O'Boyle filed a grievance with the District I Ethics Committee ("the Committee").[1] Pursuant to Rule 1:20-3(e)(3), the grievance was declined by the Secretary, with concurrence by a designated public member, based on a decision that the facts stated in the grievance, if true, would not constitute unethical conduct. On October 14, 2009, plaintiff filed a three count complaint in the Law Division against the Committee, Charles Centinaro in his official capacity as the Director of the Office of Attorney Ethics (OAE), and the New Jersey Supreme Court, captioned in lieu of prerogative writs, declaratory judgment, and the New Jersey Civil Rights Act (CRA), N.J.S.A. 10:6-2. The Law Division granted defendants' motion to dismiss pursuant to Rule 4:6-2(e) on April 16, 2010. Plaintiff appealed. On November 12, 2010, the Supreme Court denied plaintiff's application for direct certification. R. 2:12-2.

II.
Plaintiff and his wife were involved in a dispute over an unpaid bill with an electrician who performed work at their Longport home. On September 19, 2006, James Swift, an attorney for the electrician, sent a letter to plaintiff's attorney, stating an intention, if plaintiff did not promptly pay the debt, to file a construction lien and notify Longport officials that plaintiff performed work on the property without the proper construction permits. Plaintiff refused to accede to the attorney's demand for payment.
After receipt of Swift's letter, Longport officials filed municipal court complaints against plaintiff. Plaintiff represents he prevailed, but ultimately incurred over $100,000 in attorney and expert fees.
*812 Plaintiff then filed a grievance against Swift with the Committee, claiming Swift violated various RPCs, "notably 3.4(g), by threatening criminal charges against the O'Boyle family in order to gain an advantage in a civil contract matter."[2] He included a recitation of the facts, certification of his attorney who was the recipient of the letter and phone call from Swift, and a copy of Swift's letter to Longport.
By letter of April 14, 2009, Fredric L. Shenkman, Esquire and Dr. Larry Nutt,[3] the Secretary and public member of the Committee, respectively, advised plaintiff of their review of the grievance and conclusion that, even if proven, plaintiff's allegations would not constitute unethical conduct. Accordingly, pursuant to Rule 1:20-3(e)(3), the grievance was declined, and the file was closed.
Plaintiff's counsel subsequently wrote the Secretary, arguing the threat of prosecution by way of municipal ordinance in the municipal court was a "criminal" prosecution threat within the meaning of RPC 3.4(g), citing case law and Supreme Court Advisory Committee opinions. The Secretary and public member again conferred, and by letter of June 2, 2009 and e-mail of September 21, 2009, Shenkman provided plaintiff's counsel with further explanation of the decision and advised there would be no investigation, respectively.
Plaintiff filed suit against defendants, asserting in his action in lieu of prerogative writs count that the Secretary's and Committee's policy of relying on the criminal code"Title 2C"to establish the scope of attorneys' ethical responsibilities and the resulting refusal to accept jurisdiction over plaintiff's grievance was arbitrary and capricious and an abuse of discretion, and the other defendants "should not condone and are without powers to authorize district ethics committees to establish policies inconsistent with the intent and spirit of the RPCs or prior ethics opinions." Accordingly, plaintiff sought to compel the Committee to accept jurisdiction over his grievance, interpret RPC 3.4(g) "according to its plain purpose of prohibiting threats of prosecution to influence civil matters," and refrain from "arbitrarily and erroneously relying upon the criminal code to determine the scope" of Swift's ethical responsibilities. Plaintiff also sought to enjoin "all policies existing on any level of the attorney ethics system that allows local committees [to] establish their own standards regarding the interpretation of RPC 3.4(g)."
In his second count, plaintiff sought both a declaratory judgment against defendants as to the scope of RPC 3.4(g) and the conduct which it is directed to punish, and an award of attorneys' fees and costs. In his third count, plaintiff alleged his substantive due process rights under the CRA to pursue attorney discipline grievances were violated by the Committee's refusal to accept his grievance against Swift. Plaintiff sought to enjoin the Secretary from declining jurisdiction over his grievance, and an award of attorneys' fees and costs.
Defendants filed a motion to dismiss pursuant to Rule 4:6-2(e). At oral argument on April 16, 2010, Judge Linda Feinberg framed the parties' positions as follows:
Defendant[s] argu[e:] (1) the [c]ourt lacks jurisdiction to review a decision of the [C]ommittee or to compel the [C]ommittee *813 to prosecute a grievance, (2) [] plaintiff has no constitutional right to have [the] [C]ommittee review his grievance, and (3) [] defendants have immunity with respect to plaintiff's request.
In opposition, plaintiff concedes that he has no constitutional right to have his grievance heard by the committee, but is arguing that there should be some appellate processand I believe he used the term there shouldn't be [a] single gatekeeperbut there should be some mechanism of appeal.
Plaintiff's attorney articulated his arguments and clarified his constitutional challenge as follows:
One, O'Boyle does not have a constitutional right to prosecute Swift through this Court. That's what I meant in the brief. He does have a constitutional right to a substantive due process in the grievance procedure, that's the distinction that's being drawn. That's my first point.
The second point is, a law suit is a poor substitute for policing attorney ethics, and every opinion that you read usually runs against that parameter. So, I'm uncomfortable with that.
And the third and final point that I was hoping to get the Court to address was there's the Felmeister[4] decision from the Supreme Court that encourages attorneys to bring declaratory judgment actions about the rules. . . .
In dismissing the case, Judge Feinberg said the Supreme Court, within its judgment under the Constitution, had set up a specific mechanism allowing the secretary to accept grievances or to reject grievances with no appeal, and she did not have jurisdiction to change that procedure. She explained:
I'm a trial judge, the Supreme Court through a fairly elaborate process of review, public commentwhen they changed that rule it went out for public comment, and they have vested at this local level, without authority, and there's no appeal. I don't have any authority to change that, or enjoin that process. . . . I don't have jurisdiction to change that.
The judge observed that plaintiff's request for greater appellate rights than he was entitled under Rule 1:20-3(e)(6) would be more properly addressed by a request to the Supreme Court Committee with jurisdiction over the ethics rules for a modification of the current procedure.
The court was not persuaded that plaintiff's inability to appeal the Secretary's decision violated his due process rights, elaborating:
Well, I think he had a process. He presented his grievance, presented the letters. The secretary who holds a very significant position in the district ethics process reviewed it, was disinclined to accept it, decided to confer with a public member. There was a three-month lapse. I assume there was an opportunity to discuss and review, and made a decision.
So there was a process, and there was a result and there was an opportunity. It's just that the result is not something that your client agrees with and you believe there should be a second level. It's just if, like if the Legislature had adopted a statute and there should have been an appeal, but there is no appeal, I couldn't change that. You could certainly advance your argument, you know, down the street, but it's really sort of the same thing. There was no absence of a due process mechanism here, it was just more limited in focus, and if you *814 believe strongly then you can certainly articulate that to the appropriate forum. I just don't think it's here with all due respect.
Following argument, the court entered an order dismissing plaintiff's complaint with prejudice, and this appeal ensued.

III.
On appeal, plaintiff argues: (1) the Committee's interpretation of RPC 3.4(g) is legally wrong and the process contained in Rule 1:20-3 is flawed because it prohibits review; (2) the trial court was empowered to take action; (3) due process is violated because the "hearing" afforded is not "full and fair" in light of the significant matters at stake; (4) the Rules cannot distinguish between classes of grievants without violating equal protection principles; (5) the Committee's "policy" is an ultra vires act subject to being enjoined; and (6) an action in lieu of prerogative writs may proceed.[5] Based on our review of the record and applicable law, we are not persuaded by any of plaintiff's arguments and affirm.
The facts are not in dispute. We accord no deference to the motion judge's conclusions on issues of law, Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 382-83, 997 A.2d 954 (2010); Manalapan Realty, L.P., v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995), which we review de novo. Dep't of Envtl. Prot. v. Kafil, 395 N.J.Super. 597, 601, 930 A.2d 457 (App.Div.2007).

IV.
Under New Jersey law, the judicial power of government is vested in the Supreme Court of the State of New Jersey. See N.J. Const. art. VI, § 1, ¶ 1. The Supreme Court has the authority to create the rules that govern the administration, practice, and procedure of all courts in our State. Id. at § 2, ¶ 3. The Court also exercises plenary authority over the regulation of the practice of law in New Jersey, including disciplinary grievances against attorneys and business entities authorized to practice law in New Jersey. Ibid.; R. 1:20-1(a); In re Greenberg, 155 N.J. 138, 152, 714 A.2d 243 (1998); State v. Rush, 46 N.J. 399, 411, 217 A.2d 441 (1966); Boston Univ. v. Univ. of Med. & Dentistry of N.J., 176 N.J. 141, 144, 820 A.2d 1230 (2003).
To place this appeal into perspective, we provide a brief recitation of the history of the OAE, district ethics committees, and evolving grievance procedures. Before 1973, attorney disciplinary matters were handled principally at the local level, with local ethics committees established in each county. Kevin H. Michels, New Jersey Attorney EthicsThe Law of New Jersey Lawyering § 42:1 at 1028 (2011). In 1978, the Supreme Court regionalized the system by combining these county committees into twelve district ethics committees. Ibid. Public members were added to the district committees in 1979. Ibid. In 1984, the Supreme Court established the OAE and district ethics and fee arbitration committees to assist in the administration of its disciplinary function. R. 1:20-1(a). Each district ethics committee ("district committee") is comprised of not less than eight members, of which a minimum of four members must be attorneys and two must be lay persons, all of whom are appointed by the Supreme Court and serve at its pleasure. R. 1:20-3(a) & (b). All members of such district committee must reside or work in the county in which the ethics district lies. R. 1:20-3(a).
The district committee acts as an arm of the Supreme Court when it performs *815 the functions of receiving and investigating grievances, and holding disciplinary hearings. Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 433, 102 S.Ct. 2515, 2522, 73 L.Ed.2d 116, 126 (1982). Filing an ethics grievance with a district committee "is in effect a filing with the Supreme Court." Ibid. (quoting Toft v. Ketchum, 18 N.J. 280, 284, 113 A.2d 671 (1955)). See also In re LiVolsi, 85 N.J. 576, 597 n. 22, 428 A.2d 1268 (1981) (commenting that the Court has labeled fee arbitration, disciplinary and similar Supreme Court Committees and the Board "agents" of the Supreme Court).
The Director of the OAE, after consultation with the chairperson of the district committee, is required to appoint a secretary who is not a member of the committee. R. 1:20-3(c). The secretary is the designated recipient of all grievances filed with that district committee. R. 1:20-3(d). The secretary evaluates the grievance and determines whether the committee should investigate it for possible prosecution or dismiss it without further inquiry, specifically, looking at whether the conduct attributed to the attorney, taken as true, would violate the Rules of Professional Conduct. R. 1:20-3(e) & (e)(1).
In situations in which the secretary has preliminarily decided to decline jurisdiction of a grievance because the facts alleged, "if true, would not constitute unethical conduct or incapacity," the secretary is required to consult with a public member of the committee. R. 1:20-3(e)(3). If the public member agrees with the secretary's preliminary determination, the secretary must decline to accept the grievance. Ibid. However, if the public member disagrees with the secretary's preliminary decision, the secretary must accept the grievance for further investigation. R. 1:20-3(e)(4). The secretary is required to notify the grievant of the decision and provide a copy of the specific Court Rule or written guideline for declination. R. 1:20-3(e)(5).
Grievances that are initially docketed, investigated, and then dismissed may be appealed. R. 1:20-3(h); see also R. 1:20-3(e)(6). However, the Court Rules expressly provide that the decision by a secretary to decline a grievance is not appealable. R. 1:20-3(e)(6).
The attorney disciplinary rules did not always provide a secretary with the discretion to decline to docket a grievance. Immediately prior to the adoption of the current version of Rule 1:20-3 in 1995, the Rule provided, in pertinent part:
Each [District Ethics] Committee shall, in accordance with these Rules, review and act upon all grievances submitted to it by a grievant, the Supreme Court, the Administrative Office of the Courts, the Board, the Director or otherwise brought to its attention regarding alleged unethical conduct that, if proved, would constitute grounds for disciplinary action.
[R. 1:20-3(e).]
Rule 1:20-3(f) required the chairperson of the district committee to assign an attorney member to preliminarily review any grievance received by the committee and "make such inquiry as may be necessary in order to determine whether a formal complaint should be filed." The investigator then reported in writing to the chairperson,
the facts together with a finding or recommendation that (1) unethical conduct has occurred, (2) the matter should be closed for absence of an indication of unethical conduct, (3) there is a need for further investigation, (4) the matter should be referred to the Director to determine incapacity or disability under R. 1:20-9, or (5) proceedings should be *816 deferred pending completion of related litigation under R. 1:20-11(d).
[R. 1:20-3(f).]
A chairperson who concluded the matter should be closed or deferred directed the secretary to so advise the grievant and other interested parties and furnish a copy of the written investigative report. Ibid. The Rule expressly provided grievants with an ability to appeal the dismissal of a grievance to the Board, stating:
Either the Director or a grievant shall have a right of appeal to the Board within 30 days as provided by R. 1:20-4(e).
[R. 1:20-3(f).]
Pursuant to the Supreme Court's 1987 Guidelines relating to the rules governing the New Jersey Disciplinary and Fee Arbitration System, the secretary of the district committee was required to docket all grievances presented for filing, even if the secretary felt the conduct attributed to the attorney did not violate the RPCs, so long as the grievant insisted against the secretary's recommendation in pursuing the grievance. Administrative Guidelines of the Office of Attorney Ethics, Guideline No. 3 (revised March 1, 1987). In such cases, the secretary was required to docket and assign the matter to the committee's designated investigator to conduct a preliminary investigation and render a written report to the chairperson pursuant to Rule 1:20-3(f) and Guideline No. 6.
In 1991, Chief Justice Robert N. Wilentz appointed the New Jersey Ethics Commission, known as the Michels Commission,[6] and issued a mandate to "recommend those changes needed to assure that New Jersey's ethics system becomes as effective, as efficient, and as responsive as possible." Report of the New Jersey Ethics Commission ("Michels Comm'n Report"), 133 N.J.L.J. 905 (March 15, 1993).[7] The Commission was also charged with making "findings and recommendations to the Court regarding acceptable time standards for the disposition of attorney ethics matters, whether the present disciplinary structure can achieve those standards and, if not, the changes that should be made in order to achieve those standards." Ibid.
The Michels Commission Report was released in 1993. One of its primary concerns was the ever-increasing backlog of cases. Id. at 909. The Commission cited the inefficiency of the then-current system, noting the unacceptable periods of time it took to process a grievance from intake to resolution, even for uncomplicated cases. Testimony was heard from grievants who were critical of the delays in processing, sometimes for periods of years without any status updates. Id. at 909. The Commission determined that "it is readily apparent that, at all levels of discipline, many cases languish at the district ethics committee level for between two and three years without regard to the relative simplicity of certain matters." Id. at 910.
One reason the turnaround time was so poor was the burden of investigating a docketed claim:
Delays are even more likely to occur in the investigative stage, where the volunteer investigator must find time from his or her own law practice to gather all relevant facts and documentary proofs; interview in person or by telephone the grievant, the respondent and other necessary *817 witnesses; review the appropriate rules and case law on the particular issue under consideration, and finally, draft an investigative report detailing all efforts undertaken, findings and conclusions of the case, and recommending either dismissal or further action.
[Id. at 911.]
Relevant to this appeal, the Commission noted that a large number of grievances, as many as eighty percent, were never docketed but were deflected by the district secretaries, based on their determination that a cause of action had not been stated that would justify docketing the grievance. Id. at 913-14. The Commission noted the Supreme Court had an "open complaint" policy that allowed a grievant to insist that his or her grievance be docketed and investigated but that most people were unaware of this option. Id. at 914 n. 85. The Commission concluded that "this aspect of the disciplinary system requires major revision" and "[i]t should be a primary goal of the disciplinary system to provide meaningful and timely assistance to members of the public who have concerns regarding their lawyers' conduct." Id. at 914.
The Commission noted the exact problem plaintiff complains of with respect to the district secretary making determinations that no unethical conduct has been alleged:
It is currently the function of the district secretary to screen all grievances prior to docketing. While, in a perfect world, all secretaries would apply the same standards and norms, in actual practice, that action may be subjective, and may result in disparate treatment of grievants, depending on the vagaries of chance as to where the grievance was filed. There is currently no oversight of, or right of appeal from, dismissal of an undocketed grievance.
[Id. at 914 n. 88.]
On July 14, 1994, the Supreme Court issued its own administrative determinations responding to the Commission's recommendations. Administrative Determinations Relating to the Report of the New Jersey Ethics Commission ("Administrative Determinations"), 137 N.J.L.J. 1177 (July 18, 1994). The Court rejected the recommendations of the Commission for a central intake office for the receipt of all grievances against attorneys and, instead required, as part of an overall plan to increase public participation in the disciplinary process, that a public member concur with any decision by the district secretary not to docket a grievance. See ibid.; Michels Comm'n Report, supra, 133 N.J.L.J. at 914.
In the Administrative Determinations, supra, the Court stated, in pertinent part:
The secretaries and chairs of District Ethics Committees shall perform the functions set forth in this recommendation. They shall continue to be the intake office for the receipt of grievances against lawyers. No grievance shall be dismissed, however, unless that dismissal is concurred in by a public member designated by the Chair, all as set forth above.
[137 N.J.L.J. at 1177 (emphasis added).]
Expressing the desire the public share the Court's confidence in the integrity of the system, the Court noted that the change would "substantially increase public membership in the local district ethics committees, and will guarantee that before a matter reaches [the Court], all disciplinary decisions of any kind, at any level, will either be made with the participation of public members or be appealable to an agency that includes public members." Id. at 1174.
The Court amended Rule 1:20-3 on January 31, 1995, effective March 1, 1995, *818 among other items, deleting paragraph (e) and replacing it with the following language, in pertinent part:
(e) Screening; Docketing. The secretary shall evaluate inquiries and grievances in accordance with this rule and shall docket, decline, or dismiss the matters within 45 days of their receipt. The secretary shall not conduct an investigation of a grievance.

(1) The secretary shall evaluate all information received by inquiry, grievance or from other sources alleging attorney unethical conduct or incapacity by an attorney maintaining an office in that district. If the attorney is subject to the jurisdiction of the Court and the grievance alleges facts which, if true, would constitute unethical conduct as defined by the Rules of Professional Conduct, case law or other authority, or incapacity, the matter shall be docketed and investigated.
(2) The secretary shall decline jurisdiction if:
(A) the attorney is not subject to the jurisdiction of the Supreme Court of New Jersey . . .;
(B) the matter involves an inquiry or grievance regarding advertising or other related communications within the jurisdiction of the Committee on Attorney Advertising . . .;
(C) the facts stated in the inquiry or grievance involve circumstances which the Supreme Court has determined through the adoption of court rules or administrative guidelines will not be entertained, in which case the matter shall be declined;
(D) the grievance involves aspects of a substantial fee dispute and a charge of unethical conduct, unless so directed by the Director or unless the matter is referred by the Fee Committee in accordance with Rule 1:20A-4.
(3) The secretary, with concurrence by a designated public member, shall decline jurisdiction if the facts stated in the inquiry or grievance, if true, would not constitute unethical conduct or incapacity.

(4) If a grievance is not in writing and if the secretary concludes that the grievance must be declined under subsection (e)(2) or that the grievant alleges facts that, even if true, would not constitute unethical conduct or incapacity, the secretary shall so advise the grievant and that if the grievant wishes further consideration the secretary will provide a written attorney grievance form for completion. Unless declination is mandatory under subparagraph (e)(2), on receipt of a properly completed attorney grievance form the secretary will have the grievance reviewed by one or more public members of the Ethics Committee designated by the secretary. If a designated public member agrees with the secretary, the matter shall be declined. Otherwise, the matter shall be docketed and assigned for investigation.
(5) If a matter is declined, the secretary shall furnish a concise written statement to the grievant of the reasons therefor and shall enclose a copy of the court rule or written guideline for declination approved by the Supreme Court.
(6) There shall be no appeal from a decision to decline a grievance made in accordance with this rule. An appeal may be taken from dismissal of a grievance after docketing in accordance with R. 1:20-3(h).

[R. 1:20-3(e) (emphasis added).][8]
*819 Another major change made by the Court included the establishment of a Disciplinary Oversight Committee, "whose main function will be to inform the Court of the effectiveness of the revised disciplinary system and its shortcomings." Administrative Determinations, 137 N.J.L.J. at 1176. Of the eleven members of this Committee, five must be members of the public. R. 1:20B-2. The Committee reports to the Supreme Court quarterly "and at such other times as the Supreme Court and the Oversight Committee deem appropriate, making whatever recommendations it believes would improve the quality and efficiency of the disciplinary system and strengthen adherence to high ethical standards." R. 1:20B-4.

V.
We first address plaintiff's right to judicial review of his grievance. Plaintiff concedes in his reply brief that "the prerogative writ count is out," expressly recognizing LiVolsi, supra, is controlling. In LiVolsi, on direct certification, the Supreme Court rejected a similar attempt to use the Superior Court's jurisdiction in lieu of prerogative writs to challenge the exclusive attorney regulatory power of the Supreme Court's Fee Arbitration Committee. Supra, 85 N.J. at 576, 428 A.2d 1268. Relying on the prerogative writs clause of the New Jersey Constitution, art. VI, § V, par. 4,[9] the petitioner-attorney argued that an appeal in lieu of prerogative writs should lie "by right" from determinations of fee arbitration committees established pursuant to Rule 1:20A-1,[10] just as such appeals lie "by right" from determinations of legislatively-created administrative agencies. LiVolsi, supra, 85 N.J. at 592-93, 428 A.2d 1268.
The Court rejected the petitioner's contentions on two grounds. It first noted that "[a]ctions in lieu of prerogative writs lie only in those cases where a remedy was available under a traditional prerogative writ" and found no evidence that the pre-1947 writ of certiorari was available for review of actions by judicially-created agencies, such as the fee arbitration committees, as opposed to ordinary administrative agencies. Id. at 593-96, 428 A.2d 1268. Secondly, and more importantly, the Court found that permitting appeals from judicially-created agencies to the Superior Court would be "inconsistent" with the Supreme Court's "exclusive constitutional authority over the regulation of the Bar" granted by art. VI, § II, par. 3, which had as a "central element" the "control over the procedures under which these institutions are regulated." Id. at 593, 596-97, 428 A.2d 1268. It is clear district ethics committees, like fee arbitration committees, are agencies established by the Supreme Court, which are not subject to actions in lieu of prerogative writs in the Superior Court. See id. at 597, 428 A.2d 1268.
Plaintiff, however, asserts, without legal authority, that this concession "does not alter the ability [to] enjoin the operation of the Rule under the New Jersey Civil Rights Act or general equitable powers." We disagree.
*820 It would make little sense to allow the Superior Court, Law Division, to review a decision of a district ethics secretary that is expressly not appealable by Rule based on the court's "inherent equitable powers" when the Supreme Court has held that the same cannot be accomplished by an action in lieu of prerogative writs.
In GE Capital Mortgage Services, Inc. v. New Jersey Title Insurance Co., 333 N.J.Super. 1, 754 A.2d 558 (App.Div.2000), we rejected a mortgagee's attempt to utilize the court system to establish an enforceable claim against the New Jersey Lawyers' Fund for Client Protection ("the Fund") outside of the procedures established by the Supreme Court for the processing of such claims. The plaintiff filed suit against the Fund when it was informed the Fund would not consider its claim for reimbursement of monies misappropriated by the buyers' attorney. Id. at 3-4, 754 A.2d 558. The plaintiff argued it should be permitted to sue the Fund in furtherance of the Fund's goal of compensating those wronged by a member of the bar. Id. at 4-5, 754 A.2d 558. We disagreed and affirmed dismissal of the complaint for lack of subject matter jurisdiction, noting the Supreme Court's exclusive constitutional authority over the regulation of the Bar and the Court's establishment of the Fund and grant of sole discretion to the trustees to administer it pursuant to Rule 1:28. Id. at 4-6, 754 A.2d 558. We concluded that permitting the plaintiff "to establish a viable and enforceable claim against the Fund" would be a "collateral approach" that "would directly violate the procedure established by our Supreme Court for the processing of such claims[,]" reasoning that "[b]ecause the Fund is wholly a creature of the Supreme Court, the Court should determine whether alternate procedures may be followed in order to pursue a claim against the Fund." Id. at 6, 754 A.2d 558. We further reasoned that the "novel jurisdictional and public policy implications of permitting direct claims against the Fund in the Law Division go beyond the conventional rule relaxation contemplated by Rule 1:1-2 and would intrude improperly on matters clearly vested in the Fund by the Supreme Court." Ibid.
We also rejected as without merit the plaintiffs' claim that a "substantial injustice" would result if it were denied the opportunity to proceed against the Fund in the Superior Court. Ibid. We noted that not only did the rules pertaining to the Fund fail to provide for a judicial appeal process but "our Supreme Court has observed. . . that `permitting appeals from judicially created agencies to the Superior Court would be inconsistent with this Court's exclusive constitutional authority over the regulation of the Bar.'" Id. at 7, 754 A.2d 558 (quoting LiVolsi, supra, 85 N.J. at 593, 428 A.2d 1268).
We recognize that the Supreme Court has suggested the use of a declaratory judgment action to determine the constitutionality of the Court Rules. In Felmeister, two attorneys advised the ethics advisory committee of their plan to violate a prohibition against engaging in broadcast advertising during the pendency of a review of the rules. Supra, 95 N.J. at 432-34, 471 A.2d 775. After a disciplinary action was instituted when the attorneys broadcast their advertisement, they sought interlocutory review by the Supreme Court to dismiss the charges on the ground the ban on such advertising was an unconstitutional infringement of speech. Id. at 432-33, 471 A.2d 775. The Court granted leave to appeal, denied the attorneys' motions for dismissal and remanded to the district ethics committee for further proceedings. Id. at 448, 471 A.2d 775.
The Supreme Court commented that, instead of violating the mandate of the *821 Court, the attorneys "could have challenged the constitutionality of the Disciplinary Rule in a suit for a declaratory judgment" pursuant to the Uniform Declaratory Judgments Law, N.J.S.A. 2A:16-50 to -62. Id. at 444, 471 A.2d 775. As the Court noted, "`[o]ur rules are never immutable. Applications for their review are never foreclosed.'" Id. at 445, 471 A.2d 775 (quoting Am. Trial Lawyers Ass'n v. N.J. Supreme Court, 66 N.J. 258, 267, 330 A.2d 350 (1974) (upholding the constitutionality of the contingent fee rule, R. 1:21-7)).
Plaintiff also cites R.M. v. Supreme Court of New Jersey, 185 N.J. 208, 883 A.2d 369 (2005), as persuasive authority for the Law Division to have enjoined, or declared the rights between the parties in, the district ethics committee process. In R.M., a client sued the Supreme Court, a district ethics committee, the OAE and her former attorney, alleging Rule 1:20-9, which mandates that an ethics grievance filed against an attorney remain confidential until a formal complaint is filed, was an unconstitutional restriction on speech. On direct certification, R. 2:12-1, the Court struck down the Rule as unconstitutional because it was not narrowly tailored to advance a compelling interest. Id. at 227, 883 A.2d 369. The Court remanded the matter to the Professional Responsibility Rules Committee to draft implementing amendments. Id. at 231, 883 A.2d 369.
The Supreme Court has established the procedure for processing grievances. The Rule at issue expressly provides that "[t]here shall be no appeal from a decision to decline a grievance made in accordance with this rule." R. 1:20-3(e)(6). As the Court recognized in R.M., the ethics-process rules are subject to constitutional challenge, and if Rule 1:20-3(e)(6) were unconstitutional on its face or as applied, we would have a duty to declare it invalid.
We initially note that nowhere in his complaint does plaintiff seek a declaratory judgment that Rule 1:20-3(e)(6) is unconstitutional. In the second count plaintiff merely demands a judgment "[d]eclaring t[he] scope of RPC 3.4(g) and the conduct which it is directed to punish," awarding attorneys fees and costs of suit, and awarding such other relief as is fair, equitable and necessary. In the third count asserting the CRA, plaintiff alleges that defendants' refusal to exercise jurisdiction over his grievance "deprived him of his substantive due process right to pursue an ethical grievance against" Swift and seeks to enjoin the Secretary from declining jurisdiction over his grievance. In essence, plaintiff simply attacks the Committee's interpretation of RPC 3.4(g) and the Secretary's decision to decline jurisdiction of his grievance. Plaintiff does not allege Rule 1:20-3(e)(6) is unconstitutional due to the inability to appeal grievances that are declined or challenge the constitutionality of the grievance intake procedures established by Rules 1:20-3(e)(6) and 1:20-3(h).
Nevertheless, affording plaintiff broad latitude, R. 4:6-2(e), we are not satisfied he has demonstrated a constitutional basis upon which to challenge the ethics grievance intake procedure established by the Supreme Court, such that we would consider declaring it invalid and compel the Committee to docket plaintiff's grievance. Nor would we entertain plaintiff's declaratory judgment request to interpret RPC 3.4(g).
Plaintiff couches his arguments in terms of "procedural" and "substantive due process." He concedes that, as a general matter, due process does not "automatically and in all cases" require appellate review. See M.L.B. v. S.L.J., 519 U.S. 102, 110, 117 S.Ct. 555, 560, 136 L.Ed.2d 473, 483 (1996) ("[T]he Federal Constitution guarantees no right to appellate review. . . ."). *822 He contends, however, that "[d]ue process is violated because the `hearing' afforded is not `full and fair' in light of the significant matters at stake." According to plaintiff, this case "contains a procedural due process violation by virtue of the lack of a meaningful record or an appeal to counter impermissible interpretations being made at intake stage." His "substantive challenge" is that the "local ethics committee is left, by the lack of procedural safeguards, to create whatever standards it sees fit to impose on a grievant and there is no way to have the declined grievance reviewed or safeguarded [in] a meaningful way to have his grievance considered." In other words, plaintiff "complains of the inability to have declined grievances subject to some sort of appellate-type review."[11]
Plaintiff fails to assert a constitutional infirmity existing in Rule 1:20-3(e)(6). He concedes that he does not have a "right" to prosecute the ethics violation and this case does not involve a fundamental right, such as freedom of speech. Accordingly, the standard to be applied is the "rational basis" test. Therefore, as long as Rule 1:20-3(e)(6) is "supported by a conceivable rational basis, it will withstand a substantive due process attack." Greenberg v. Kimmelman, 99 N.J. 552, 563, 494 A.2d 294 (1985).
In In re Logan, 70 N.J. 222, 228-29, 358 A.2d 787 (1976), the Supreme Court rejected a constitutional challenge by an attorney subject to disciplinary proceedings before it following a presentment by a local ethics committee that his due process rights were violated because there were no appeals from the Court's determinations in disciplinary matters. In LiVolsi, the Court similarly rejected the attorney's Fourteenth Amendment due process challenge. The Court explained that the due process clause "does not require states to provide litigants with a right to appeal adverse holdings by lower tribunals" or "by administrative agencies." Supra, 85 N.J. at 592, 428 A.2d 1268. Accordingly, the Supreme Court held that its decision to make Fee Arbitration Committee determinations non-reviewable in the courts similarly did not violate the due process clause. Id. at 592 and n. 16, 428 A.2d 1268 (citing Logan, supra, 70 N.J. at 228-29, 358 A.2d 787).
We also reject plaintiff's argument that Rule 1:20-3(e)(6) violates equal protection principles because it allows grievants whose complaints are docketed and dismissed by the committee to appeal the committees' decisions, but not those whose complaints are declined by the secretary and never docketed.
Because plaintiff is not a member of a suspect class and there is no fundamental right being infringed upon by Rule 1:20-3(e)(6), there need only be a rational basis supporting the difference in treatment between grievants whose complaints are preliminarily declined and those whose are docketed and then dismissed. See LiVolsi, supra, 85 N.J. at 586, 428 A.2d 1268; see also Somers Assocs., Inc. v. Gloucester Twp., 241 N.J.Super. 323, 329-30, 575 A.2d 20 (App.Div.) (noting that the right of appeal is not a "necessary ingredient to due *823 process" nor a "fundamental right" for the purposes of equal protection analysis), certif. denied, 122 N.J. 355, 585 A.2d 366 (1990).
The disciplinary rules were the subject of significant review and modification by the Supreme Court, the body constitutionally entrusted with the authority to regulate the practice of law in New Jersey. Considering, in part, the available resources and the backlog of cases, the Supreme Court clearly had a rational basis for streamlining the disciplinary grievance intake procedure. The Court developed an efficient and expeditious method by which experienced counsel would screen and dispose of ethics complaints at an early stage that do not even allege unethical conduct, and provide "appellate" review, i.e. review by the Board, of only those grievances that alleged a prima facie case of unethical conduct as defined by the RPCs, case law or other authority, but were not supported by the facts revealed by an investigation. Expressing the desire that the public share the Court's confidence in the integrity of the disciplinary system and be active participants, the Court also modified Rule 1:20-3 within its wisdom and developed a procedure whereby the secretary was required to obtain a public member's concurrence to decline jurisdiction of a grievance whose facts did not constitute unethical conduct or incapacity. R. 1:20-3(e)(3).
That plaintiff is dissatisfied with the procedure established by the disciplinary rules and the Committee's decision, or has suggestions for what he considers to be improvements to the process, does not translate into a cognizable claim in the court system. As the Committee followed the applicable rule pertaining to the processing of ethics complaints, plaintiff received all due process to which he was entitled under law. As Judge Feinberg noted, there was a process, an opportunity for participation by plaintiff, and a result; plaintiff simply disagrees with that result. Plaintiff presented his grievance, supplemented by a brief by his attorney, which was reviewed and declined twice by the Committee's Secretary after conferring with the public member in accordance with R. 1:20-3(e)(3) & (5). Accordingly, pursuant to Rule 1:20-3(e)(6), the Committee's decision is final and plaintiff has no judicial recourse.
Affirmed.
NOTES
[1] District I handles grievances submitted against attorneys practicing in Atlantic, Cape May, Cumberland and Salem Counties.
[2] RPC 3.4(g) prohibits lawyers from presenting or threatening to "present criminal charges to obtain an improper advantage in a civil matter."
[3] Larry Nutt, Ph.D. is a criminal justice professor at Richard Stockton College of New Jersey.
[4] In re Felmeister, 95 N.J. 431, 471 A.2d 775 (1984).
[5] As discussed infra, plaintiff subsequently abandoned the last argument.
[6] The late Herman D. Michels, former Presiding Judge for Administration of the Appellate Division, was appointed to chair the Commission.
[7] See also Report of the New Jersey Ethics Commission, 2 (1993). The Michels Report was reprinted in full in the New Jersey Law Journal. For ease of reference, we will cite to the N.J.L.J. in this opinion.
[8] There were minor revisions in 2004, which are not relevant to this appeal.
[9] Art. VI, § V, par. 4 of the New Jersey Constitution provides:

Prerogative writs are superseded, and, in lieu thereof, review, hearing and relief shall be afforded in the Superior Court, on terms and in the manner provided by rules of the Supreme Court, as of right, except in criminal cases where such review shall be discretionary.
[10] R. 1:20A-3(c) provided: "Appeal. No appeal from the determination of a Fee Arbitration Committee shall lie."
[11] Plaintiff uses the term "substantive due process" but does not allege Rule 1:20-3(e)(6) involves governmental action, i.e., denial of a right to appeal, which is so egregiously arbitrary it shocks the judicial conscience. See Plemmons v. Blue Chip Ins. Servs., Inc., 387 N.J.Super. 551 568, 904 A.2d 825 (App.Div. 2006) ([T]he "level of . . . abuse of power required to support a substantive due process claim will be found only if an official's action shocks the conscience.") (internal quotation marks omitted). Nor does plaintiff allege any of the factors necessary to support a CRA claim. See N.J.S.A. 10:6-2.